**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Victor GREGER, Defendant-Appellant.**

**No. 80–1818.**

United States Court of Appeals,
Ninth Circuit.

Argued March 12, 1981.

Submitted Sept. 15, 1981.

Decided Oct. 1, 1981.

Rehearing and Rehearing In Banc
Denied Nov. 19, 1981.

**1110**

William B. Terry, Goodman, Oshins, Brown & Singer, Las Vegas, Nev., for defendant-appellant.

C. Stanley Hunterton, Special Atty., Dept. of Justice, Las Vegas, Nev., for plaintiff-appellee.

Before DUNIWAY and NORRIS, Circuit Judges, and HANSON,* District Judge.

DUNIWAY, Circuit Judge:

Greger appeals from a post-indictment, pre-trial order disqualifying his counsel. The order was entered after a hearing at which Greger refused to waive his Sixth Amendment right to conflict-free representation and at which Greger's counsel stated that he would not ask his other clients and former clients—potential witnesses against Greger—to waive their attorney-client privileges. Because we conclude that the district court's order is not appealable under 28 U.S.C. § 1291 and because the case does not present exceptional circumstances warranting issuance of a writ of mandamus, we dismiss the appeal without deciding the merits of the disqualification order.

I. *Jurisdiction under 28 U.S.C. § 1291.*

In *Cohen v. Beneficial Industrial Loan Corp.*, 1949, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528, the Supreme Court held that a "small class" (*Id.* at 546, 69 S.Ct. at 1225) of orders are final and appealable under § 1291, even though they do not end the litigation. The Court has defined the attributes of such orders as follows: "[T]he order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 1978, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351. The Court has included within this small class, *inter alia*, an order denying a defendant's claim that his impending trial puts him twice in jeopardy, *Abney v. United States*, 1977, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651, and an order denying a motion to reduce bail, *Stack v. Boyle*, 1951, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3. On the other hand, a pre-trial discovery order has been excluded from the *Cohen* category, *United States v. Ryan*, 1971, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85, as has a pre-trial order denying a defendant's motion to dismiss an indictment because of an alleged violation of his right to a speedy trial. *United States v. MacDonald*, 1978, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18. For further discussion of *Cohen* and the collateral order rule, see *Firestone Tire & Rubber Co. v. Risjord*, 1981, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571; *United States v. Garner*, 9 Cir., 1980, 632 F.2d 758, 761–66.

The question we confront here is whether a pre-trial order in a criminal case disqualifying defense counsel is a "final decision" within the collateral order doctrine of *Cohen, supra,* and therefore appealable under 28 U.S.C. § 1291. There is considerable case law on the appealability of pre-trial orders *denying* motions to disqualify counsel, but there is comparatively little on the same question where the order is granted.

In *Cord v. Smith*, 9 Cir., 1964, 338 F.2d 516, 521, clarified, 1966, 370 F.2d 418, we held, in the context of a civil suit, that an order denying a motion to disqualify counsel was not an appealable order. We approved the position then taken by the

* The Honorable William C. Hanson, Senior United States District Judge for the Northern District of Iowa, sitting by designation.

Second Circuit in *Fleischer v. Phillips*, 2 Cir., 1959, 264 F.2d 515, that an order denying a motion to disqualify did not fall within the "small class" of collateral orders made appealable by *Cohen*. However, we held further that "where a party attempts to appeal from an unappealable order, and the circumstances justify our doing so, we can, in our discretion, treat the proceedings as a petition under the All Writs Act, 28 U.S.C. § 1651." *Id.* at 521. Following *Cord*, in civil proceedings, we have treated appeals from orders denying motions to disqualify counsel as petitions for a writ of mandamus in some cases. *See Unified Sewerage Agency v. Jelco Inc.*, 9 Cir., 1981, 646 F.2d 1339, 1343–1344; *Trone v. Smith*, 9 Cir., 1980, 621 F.2d 994, 996 & n.1; *Chugach Electric Ass'n v. U.S.D.C. for the District of Alaska*, 9 Cir., 1966, 370 F.2d 441, 442. *See also United States v. State of Washington*, 9 Cir., 1978, 573 F.2d 1121.

The appealability of pre-trial orders denying motions to disqualify has had a far more checkered history in other circuits. The Second Circuit, for example, in *Harmar Drive-In Theatre, Inc. v. Warner Bros. Pictures*, 2 Cir., 1956, 239 F.2d 555, concluded that both an order denying and an order granting a motion to disqualify are appealable under *Cohen*. It then reversed itself, at least as to an order denying a disqualification motion, in *Fleischer v. Phillips, supra*, only to return to *Harmar* in *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 2 Cir., 1974, in banc, 496 F.2d 800.

In part because of the influence of *Silver Chrysler*, a majority of the circuits came to hold that an order denying a disqualification motion is appealable. *See, e. g., Akerley v. Red Barn System, Inc.*, 3 Cir., 1977, 551 F.2d 539; *Aetna Casualty and Surety Company v. United States*, 4 Cir., 1978, 570 F.2d 1197; *Woods v. Covington County Bank*, 5 Cir., 1976, 537 F.2d 804; *Melamed v. ITT Continental Baking Co.*, 6 Cir., 1976, 534 F.2d 82; *Fred Weber, Inc. v. Shell Oil*, 8 Cir., 1977, 566 F.2d 602; *Fullmer v. Harper*, 10 Cir., 1975, 517 F.2d 20. *See also Schloetter v. Railoc of Indiana, Inc.*, 7 Cir., 1976, 546 F.2d 706 (order granting motion to disqualify); 9 Moore's Federal Practice ¶ 110.-13[10].

But this was by no means the end of the story. The District of Columbia Circuit rejected the *Silver Chrysler* rule, in the case of an order denying a motion to disqualify, *Community Broadcasting of Boston, Inc. v. FCC*, D.C.Cir., 1976, 546 F.2d 1022, 1026–1027. And as the other courts of appeal that followed *Silver Chrysler* came to experience its effects, they too began a reevaluation. In *Armstrong v. McAlpin*, 2 Cir., 1980, 625 F.2d 433, 437–440, the Second Circuit itself abandoned *Silver Chrysler*. The Sixth Circuit, in *Melamed v. ITT Continental Baking Co.*, 1979, 592 F.2d 290, 294–296, and the Eighth Circuit, in *In re Multi-Piece Rim Products Liability Litigation*, 8 Cir., 1980, in banc, 612 F.2d 377, vacated sub nom, *Firestone Tire and Rubber Co. v. Risjord, supra*, have both abandoned the *Silver Chrysler* rule, in cases of orders denying motions to disqualify. *See also In re Fine Paper Antitrust Litigation*, 3 Cir., 1980, 617 F.2d 22; *In re Continental Investment Corp.*, 1 Cir., 1980, 637 F.2d 1, 4–8.

The Supreme Court finally laid to rest the question of the appealability of an order denying disqualification, at least in the context of civil suits, in *Firestone Tire & Rubber Co. v. Risjord, supra*. Emphasizing the narrowness of the *Cohen* exception and the policies served by § 1291's insistence that appeals await final judgment, the Court held that orders denying motions to disqualify counsel are not appealable orders. The Court reasoned that such orders failed that part of the *Cohen* test which requires that the order "be effectively unreviewable on appeal from a final judgment":

> The properiety [sic] of the District Court's denial of a disqualification motion will often be difficult to assess until its impact on the underlying litigation may be evaluated, which is normally only after final judgment. The decision whether to disqualify an attorney ordinarily turns on the peculiar factual situation of the case then at hand, and the order embodying such a decision will rarely, if ever, represent a final rejection of a

claim of fundamental right that cannot effectively be reviewed following judgment on the merits.... [S]hould the Court of Appeals conclude after the trial has ended that permitting continuing representation was prejudicial error, it would retain its usual authority to vacate the judgment appealed from and order a new trial. That remedy seems plainly adequate....

(449 U.S. at 377, 101 S.Ct. at 675). The Court noted that in certain circumstances a party might attempt to have the order denying disqualification certified for interlocutory appeal under 28 U.S.C. § 1292(b) and that, in "exceptional circumstances," a writ of mandamus might be available from the court of appeals. The Court explicitly reserved the question whether an order *granting* disqualification would be appealable and whether an order denying a disqualification motion in a criminal case might be appealable.

We believe that the Court's reasoning in *Firestone* is equally applicable to the case at bar, and that Greger's "plainly adequate" remedy is to obtain review of this order, and other claims of error, should he so desire, at the conclusion of the trial, if he is convicted. The fact that *Firestone* was a civil action while this is a criminal proceeding does not, we think, distinguish the two cases. Indeed, if anything the *Cohen* rule is more sparingly applied in the criminal context. As the Court has repeatedly stated "[a]dherence to [the] rule of finality has been particularly stringent in criminal prosecutions because 'the delays and disruptions attendant upon intermediate appeal,' which the rule is designed to avoid, 'are especially inimical to the effective and fair administration of the criminal law.'" *Abney v. United States, supra,* 431 U.S. at 657, 97 S.Ct. at 2039, quoting *DiBella v. United States,* 1962, 369 U.S. 121, 126, 82 S.Ct. 654, 657, 7 L.Ed.2d 614. It is true that in a criminal context we deal with the party's Sixth Amendment right to counsel of choice, but if this right may be protected by appeal after final judgment, the addition of this constitutional element makes no difference to our analysis. *See United States v.*

*MacDonald, supra* (Sixth Amendment right to speedy trial adequately protected by appeal after judgment).

Nor do we believe that the reasoning in *Firestone* is any less applicable to a case in which the motion to disqualify has been granted rather than denied. We recognize that some of the circuits and some commentators have argued for a distinction between orders granting and orders denying motions to disqualify. The Second Circuit has argued with respect to orders granting motions to disqualify that

> In such cases, the losing party is immediately separated from counsel of his choice. If the order is erroneous, correcting it by an appeal at the end of the case might well require a party to show that he lost the case because he was improperly forced to change counsel. This would appear to be an almost insurmountable burden. In addition, permitting an immediate appeal from the grant of a disqualification motion does not disrupt the litigation, since the trial must be stayed in any case while new counsel is obtained. Moreover, the grant of a disqualification motion may effectively terminate the litigation if the party whose counsel is disqualified cannot afford to hire new counsel to begin the litigation anew.

*Armstrong v. McAlpin, supra,* 625 F.2d at 440–41. *See, e. g., In re Continental Investment Corp., supra,* 637 F.2d at 7; *In re Multi-Piece Rim Products Liability, supra,* 612 F.2d at 378, *vacated sub nom Firestone Tire and Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571, *supra; United States v. Deutsch,* 5 Cir., 1979, 599 F.2d 46, 48; *In re Benjamin,* 1 Cir., 1978, 582 F.2d 121, 124; *In re Investigation Before April 1975 Grand Jury,* D.C.Cir., 1976, 531 F.2d 600, 605 n.8; *Schloetter v. Railoc of Indiana, Inc., supra,* 546 F.2d at 709; *Draganescu v. First National Bank of Hollywood,* 5 Cir., 1974, 502 F.2d 550, 551 n.1.

One commentator has argued that

> Unlike disqualification denials, orders granting disqualification are [not] subject to appellate review after final judgment.

If, after the disqualification, the party wins the case, the disqualification becomes moot despite the cost that disqualification imposed on the party. If the party whose attorney is disqualified loses the case, then the error would be viewed as nonprejudicial, except possibly in the most extreme circumstances. This is because, to prove prejudice, it would be necessary to establish that replacement counsel had been so incompetent and unprepared relative to former counsel as to have affected the case. Such a situation is improbable.

Comment, The Appealability of Orders Denying Motions for Disqualification of Counsel in the Federal Courts, 45 U.Chi.L.Rev. 450, 458 n.39.

We are not convinced by these arguments in the context of a criminal case. We express no opinion on the persuasiveness of these arguments in a civil case, where prejudice is not likely to be presumed. To begin with, the fact that a disqualification order will never be appealed if the defendant triumphs does not trouble us at all. On the contrary, this is an obvious boon to the system and is just the sort of happy result envisioned by § 1291's requirement that appeals not be taken piecemeal. And if the system is benefitted, it is hard to say that the defendant has had to bear any "cost" because of the disqualification. The fact that he won the litigation would indicate that he was not prejudiced by the order, even if it were erroneous.[1]

▮ On the other hand, if the defendant is found guilty and on appeal attacks the order disqualifying his counsel, there is no reason why his right to counsel of choice cannot be vindicated on appeal. We would agree that if the defendant were required to show on appeal that he was convicted because of new counsel, the burden would be insurmountable and the disqualification "effectively unreviewable on appeal." But such a burden need not be imposed. At least in this circuit, if the order can be shown to have been erroneous, prejudice will be presumed. *Slappy v. Morris,* 9 Cir., 1981, 649 F.2d 718, 723 n.4. (No prejudice need be shown where district court violates defendant's Sixth Amendment right to counsel by unreasonably refusing to grant a continuance: "The crux of Slappy's claim is that the court's actions denied him of [sic] his right to counsel.") *Releford v. United States,* 9 Cir., 1961, 288 F.2d 298, 302. ("[W]here there has been complete disregard of the defendant's right to choose his own counsel, prejudice will be assumed.")

Finally, to argue that because the litigation has been once disrupted by disqualification of counsel, it therefore may be twice disrupted by a pre-judgment appeal, is quite unconvincing, particularly in a criminal case where delay can be so damaging. Moreover, because we deal here with a criminal case, if the defendant cannot afford new counsel, the government will provide counsel. Thus, the district judge can see to it that the defendant has the assistance of counsel throughout the proceedings.

In short, we do not deal here with a right such as the right against double jeopardy, which, if it is not vindicated before trial, is irretrievably lost. Greger can obtain review of the disqualification order after trial, and secure a new trial should he persuade the appellate court that the disqualification order is in error. A new trial protects Greger's right to counsel of choice, even if it is a remedy which imposes costs upon the judicial system. Yet in our view and in the opinion of Congress as expressed in § 1291, the costs to the system as a whole are far greater where appeals are piecemeal. Of course the expedient of retrial, if it protects the defendant, also subjects him to a second trial. But this is not sufficient reason to permit prejudgment appeal. If it were, a whole host of orders made in the course of a criminal trial would be immediately appealable. *See United States v. Layton,* 9 Cir., 1981, 645 F.2d 681.

---

1. We do not consider here whether orders disqualifying government counsel are appealable. In such a case, were the defendant to be found innocent, the government, because of the rule against double jeopardy, would not be able to seek re-trial on the basis that the disqualification order was erroneous.

**1114**

## II. *Mandamus.*

■ If there is a lesson in the shifting history of the appealability of orders *denying* motions to disqualify counsel, it is that the most prudent course is to find such orders unappealable but to retain discretion to permit the really exceptional cases to be heard before final judgment by means of a petition for writ of mandamus. Having found the disqualification order unappealable, we consider whether extraordinary relief is available in this instance under the All Writs Act, 28 U.S.C. § 1651.

■ In *Bauman v. United States District Court*, 9 Cir., 1977, 557 F.2d 650, 654–55, we identified five guidelines to be used in deciding whether the extraordinary relief of a writ of mandamus is appropriate to a particular case:

(1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires . . . (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal . . . (3) The district court's order is clearly erroneous as a matter of law . . . (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules . . . ■ The district court's order raises new and important problems, or issues of law of first impression. (citations omitted).

It should be clear from our earlier discussion of the appealability of orders granting disqualification that the first two guidelines do not point in favor of extraordinary relief here.

Nor, on the facts of this case, do any of the last three guidelines indicate the suitability of extraordinary relief. Greger has been indicted as part of a continuing government investigation into possible criminal activity in the operation of four Las Vegas casinos owned or operated by the Argent Corporation. Greger was the Food and Beverage Manager of one of these casinos and the government alleged that he used his position to extort bribes and kickbacks from purveyors. Several of the defendants and targets of this investigation, many of whom were associates or superiors

of Greger's, have been represented by the same lawyer, Oscar B. Goodman. Greger would now add his name to the list of Argent employees Goodman has represented.

The government has represented to the court that several of Goodman's clients and former clients will be called to testify against Greger and that their testimony "will be directly incriminating" to Greger. The government argues that virtually all of the potential defenses available to Greger will implicate Goodman's other clients, and that obtaining a favorable plea bargain would require Greger to inform against Goodman's other clients. The government further informed the court that it had attempted to secure Goodman's voluntary withdrawal by making available to the defense its evidence against Greger but that this offer, like all of its efforts to initiate plea bargain negotiations, had been rebuffed.

At a hearing on the disqualification motion Greger and Goodman asserted that there was no conflict of interest and that therefore Greger would not and need not waive his right to conflict-free representation, and that Goodman's present and former clients, if called to testify, would not and need not be asked to waive their attorney-client privileges. Goodman explained that he had not accepted the government's invitation to examine its evidence against Greger because by doing so "he might encroach on another client's rights to effective assistance of counsel." The district judge questioned both Greger and Goodman closely. The court concluded that "conflicts of interest reasonably may be expected to arise" and ordered Goodman disqualified.

Without deciding whether or not the disqualification order was proper, we do note that on these facts, and in the absence of waivers from Greger or from Goodman's other clients, the order appears to be consistent with the law in this circuit, *see United States v. Morando*, 9 Cir., 1980, 628 F.2d 535 (in absence of waiver of attorney-client privilege attorney's representation of

defendant and witness required district judge to accept attorney's motion to withdraw or take steps to insure there was no conflict); *Willis v. United States*, 9 Cir., 1979, 614 F.2d 1200 ("[W]e agree that it is good practice for a trial judge to make inquiry when the possibility of a conflict of interest seems apparent" *id.* at 1206; "[*Kaplan v. United States*, 9 Cir., 1967, 375 F.2d 895] ... lends support to the generally accepted proposition that when the trial court determined or is advised that the possibility of a conflict is more than remote, but is real and present, it should not allow joint representation without obtaining a knowing waiver from the defendant." *Id.* at 1206 n.4); *United States v. Partin*, 9 Cir., 1979, 601 F.2d 1000, 1006 (defendant waived his right to conflict-free representation, witness waived his attorney-client privilege); *United States v. Vargas Martinez*, 9 Cir., 1978, 569 F.2d 1102, 1104 (fact that prosecution witness was client of defense counsel and that witness did not waive her attorney-client privilege "presented the *possibility* of disclosure of confidential communications" and disqualification order was correct (emphasis added)). *Cf. Chugach Electric Association v. U.S.D.C. for the Dist. of Alaska, supra*, 370 F.2d at 443–44 (in civil suit, although actual conflict of interest is not established, likelihood that attorney will use knowledge gained from former client, now adversary, requires disqualification).

Finally, in light of the decisions cited above, we do not find that the order here "raises new and important problems, or issues of law of first impression." *Cf.* Wright, Law of Federal Courts, (3d ed. 1976 at 509) ("Thus, the cases that hold appeal will lie from an order granting or denying a motion to disqualify opposing counsel threaten to invite a large number of similar appeals rather than to settle a general question.")

Thus glancing at but not deciding the merits, we do not find that the district court's order qualifies under the guidelines for extraordinary relief. *See Firestone Tire & Rubber Co. v. Risjord, supra*, footnote 13. *Cf. Unified Sewerage Agency v.*

*Jelco, Inc., supra.* We therefore decline to treat the appeal as a petition for a writ of mandamus.

Appeal dismissed.