# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-10174 |
| *Plaintiff-Appellant*, | D.C. No. 4:18-cr-01695-JAS-EJM-1 |
| v. | |
| DAVID KAPONE WILLIAMS; MARCELL DEMETRIUS GRAY; SHAWMAINE EUSTACE ARDELL MOORE; SAMUEL LEE BERRELLE RAKESTRAW III; MICHAEL ANTHONY WILLIAMS; KEANA NICOLE IWANKIW; CLIFFTON MARTINEZ; JERMAINE LAMAR MAXWELL; REGINALD COLE JOHNSON; TROY JERMAINE HOWELL; MARK ANTHONY HOLGUIN; TENELL MICHAEL MURE; LABARR MARTINEZ; DAVID GOROSAVE; BUFFIE ANN BRIDGES; DEZIRAE ALEXANDRIA MONTEEN, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the District of Arizona
James Alan Soto, District Judge, Presiding

Argued and Submitted December 7, 2022
Phoenix, Arizona

Filed May 18, 2023

Before:  Kim McLane Wardlaw and Patrick J. Bumatay,
Circuit Judges, and Jack Zouhary,[*] District Judge.

Opinion by Judge Bumatay

## SUMMARY[**]

### Criminal Law

In a criminal case in which the government has charged 19 alleged members of the Western Hills Bloods with multiple offenses, the panel reversed the district court's order disqualifying the entire District of Arizona U.S. Attorney's Office and directing the Department of Justice to supply an attorney from outside Arizona to represent the government in pending motions, brought by 16 defendants, concerning misconduct allegations against one Assistant U.S. Attorney in the Arizona office.

Addressing its jurisdiction over the interlocutory appeal, the panel held that disqualification of an entire U.S.

---

[*] The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Attorney's Office warrants appellate review under the collateral order doctrine.

The panel held that the district court's sweeping disqualification order was an abuse of discretion. The panel wrote that based on separation-of-powers principles and the consensus among courts, disqualification of an entire U.S. Attorney's Office is an extreme remedy—only appropriate in the most extraordinary circumstances. First, a district court must find a strong factual predicate for blanket disqualification. Second, a district court must determine that the U.S. Attorney's Office's continued representation of the government will result in a legal or ethical violation. These requirements mean a court must not only make specific findings against the accused prosecutors, but it must also determine that any misconduct or conflict so pervades the office that less intrusive remedies would be inadequate to safeguard against a legal violation. The panel held that the record does not support an officewide disqualification, and without any evidence of officewide involvement, it was pure speculation to conclude that any conflict or misconduct pervaded the entire U.S. Attorney's Office. The panel also held that no clear violation of law or ethics supports an officewide disqualification. The panel wrote that the district court—whose decision to disqualify was informed, in part, by a comparison to an internal investigation of a private company—does not appear to have sufficiently appreciated the separation-of-powers concern.

## COUNSEL

Krissa M. Lanham (argued), Assistant United States Attorney; Gary M. Restaino, United States Attorney for the District of Arizona; Office of the United States Attorney; Phoenix, Arizona; Shelley Kay-Glenn Clemens, Assistant United States Attorney; United States Department of Justice; Washington, D.C.; for Plaintiff-Appellant.

Erin M. Carrillo (argued), The Carrillo Law Firm PLLC, Tucson, Arizona; Richard G. Novak, Richard G. Novak Law Offices, Berkeley, California; for Defendant-Appellee David Kapone Williams.

Trevor R. Hill, Ferguson Hill Filous PLLC, Tucson, Arizona, for Defendant-Appellee Marcell Demetrius Gray.

Mark Paige, Paige Law Firm, Mesa, Arizona, for Defendant-Appellee Shawmaine Eustace Ardell Moore.

Anthony Payson II, Payson and Gattone, Tuscon, Arizona, for Defendant-Appellee Samuel Lee Berrelle Rakestraw III.

Ramiro Flores Jr., Law Office of Ramiro S. Flores, Tucson, Arizona, for Defendant-Appellee Michael Anthony Williams.

Jeffrey J. Rogers, Law Offices of Jeffrey J. Rogers PLC, Tucson, Arizona, for Defendant-Appellee Keana Nicole Iwankiw.

Saul M. Huerta, The Huerta Law Office, Tucson, Arizona, for Defendant-Appellee Cliffton Martinez.

Steven P. Sherick, Sherick Law Office PC, Tucson, Arizona, for Defendant-Appellee Jermaine Lamar Maxwell.

Laura Udall, Laura E. Udall PLLC, Tucson, Arizona, for Defendant-Appellee Reginald Cole Johnson.

Jessica H. Turk, Law Offices of Jessica Turk, Vail, Arizona, for Defendant-Appellee Troy Jermaine Howell.

Nathan D. Leonardo, Leonardo Law Offices PLLC, Tucson, Arizona, for Defendant-Appellee Mark Anthony Holguin.

Thomas E. Higgins, Law Offices of Thomas E. Higgins, Tucson, Arizona, for Defendant-Appellee Tenell Michael Mure.

Barbara T. Catrillo, Catrillo Law Firm, Tucson, Arizona, for Defendant-Appellee Labarr Martinez.

Mark E. Evans, Evans Law Offices PLLC, Tucson, Arizona, for Defendant-Appellee David Gorosave.

Raymond V. Panzarella, Law Offices of Raymond V. Panzarella, Tucson, Arizona, for Defendant-Appellee Buffie Ann Bridges.

Michael L. Brown, Law Office of Michael L. Brown, Tucson, Arizona, for Defendant-Appellee Dezirae Alexandria Monteen.

## OPINION

BUMATAY, Circuit Judge:

The U.S. Attorney's Office in the District of Arizona has 180 federal prosecutors—known as Assistant U.S. Attorneys. In this case, multiple defendants alleged that *one* Assistant U.S. Attorney engaged in potential professional misconduct. Rather than screening out the accused Assistant U.S. Attorney, the district court disqualified *all 180* federal prosecutors from the Arizona U.S. Attorney's Office from defending against the misconduct allegations. The district court then ordered the Department of Justice to supply an attorney from outside Arizona to litigate the defendants' motions. The district court reached this sweeping sanction without making any findings of misconduct involving other members of the U.S. Attorney's Office or the U.S. Attorney himself. Nor did the district court conclude that any member of the U.S. Attorney's Office violated a law or ethical rule. Instead, the district court speculated about possible conflicts and ordered officewide disqualification based on a misguided analogy to the corporate world. But in-house counsels and federal prosecutors are not the same. The Executive branch is a co-equal branch of government— entitled to judicial respect. When disqualifying an entire Executive branch office, separation of powers requires much more than the district court provided. We thus reverse.

## I.

The Western Hills Bloods, according to the government, are a violent street gang operating in Tucson, Arizona. In the government's view, members of the gang have been involved in drug trafficking, illegal firearms dealing, assaults, and murders. The government alleges the gang ran

a network of "crack houses" to distribute crack, cocaine, marijuana, methamphetamine, heroin, and other narcotics. It is also believed that gang members have been responsible for several shootings since 2014, including the murders of two rival gang members.

In 2018, the U.S. Attorney's Office for the District of Arizona indicted 19 alleged members of the Western Hills Bloods. The government charged the defendants with 46 offenses, including RICO conspiracy, murder in aid of racketeering, assault with a dangerous weapon, and various drug and firearm offenses. David Williams was the lead defendant in the indictment. Dezirae Monteen was also charged as part of the conspiracy.

In April 2022, Williams, along with 15 other co-defendants, filed a sealed motion alleging "professional misconduct" violating their Fifth and Sixth Amendment rights. Williams claimed that Monteen's former attorney had simultaneously represented Monteen and a defendant arrested for unrelated charges who later agreed to cooperate against the Western Hills Bloods. Williams further claimed that the Assistant U.S. Attorney prosecuting the Western Hills Bloods learned of the potential conflict of interest in August 2021, but failed to notify defendants or the district court of the conflict until March 2022. Williams sought discovery and a sealed evidentiary hearing to investigate the interactions between Monteen's former attorney and the Assistant U.S. Attorney. The defendants also filed a sealed ex parte motion alleging further misconduct by the former attorney. The government was not provided a copy of that motion.

The government requested several extensions of time to respond to Williams's initial motion. The magistrate judge

handling the Western Hills Bloods' prosecution granted the extensions, giving the government until June 2022 to respond. But before the government responded, the magistrate judge issued a sealed scheduling order setting a status conference for May 2022. The sealed order did not provide notice of the issues the magistrate judge wished to discuss at the status conference. An Arizona Assistant U.S. Attorney, who was not involved in the Western Hills Bloods' prosecution, filed a special appearance to litigate the motion and appeared at the status conference.

At the status conference, the magistrate judge disclosed to the government that the court held an ex parte hearing on the defendants' ex parte motion the week before. The magistrate judge stated that "defense counsel raised some concerns about how the motion would be handled procedurally . . . primarily in terms of the government's representation." The magistrate judge advised that defense counsel "thought it would be a good idea to get into court before the government even filed its response" to the motion. The magistrate judge informed the government that the status conference was to "talk about some of those things." The magistrate judge then turned to Williams's defense counsel, who "spearheaded [the defendants'] argument."

Williams's counsel then asked the magistrate judge to appoint "firewall counsel outside the District of Arizona" to handle the defendants' motion. Defense counsel explained that "we don't know how far this . . . conflict issue . . . extended beyond" the one Assistant U.S. Attorney. But she suggested that allowing the Arizona U.S. Attorney's Office to litigate the motion would be like allowing a law firm "to investigate an ethics complaint involving [its] law partner."

In response, the Assistant U.S. Attorney stated he was there to litigate the defendants' motions and that if the magistrate judge wanted him to have "separation" from the Western Hills Bloods' prosecution, he "would be happy to do it." The Assistant U.S. Attorney argued that there was no need to "be walled off," that the "trial team [was] the trial team," and that he could continue to litigate the motions independently. The prosecutor later stated he could review any discovery involved in the motions, and he was prepared to take any privileged information he learned "to [his] grave." He then reiterated that "[i]f [he is] segregated off" from the trial team, "that's fine," and that his goal was to ensure that the "United States [was] represented ably and that [the court got] to the right result."

The magistrate judge expressed concern that it was "too late" to wall off the Arizona Assistant U.S. Attorney because the magistrate judge "imagined" that "th[e] case generally has gone up the food chain," including to the Arizona U.S. Attorney. The magistrate judge also thought that, along with the U.S. Attorney, the "case went to [Main Justice in] D.C." based on the charges. The magistrate judge continued that "there is no doubt in [the court's] mind that th[e instant] motion ha[d] gone up th[e] food chain, and . . . may have leaked horizontally to other people in the [U.S. Attorney's] office." The magistrate judge considered it a "problem" for any Arizona Assistant U.S. Attorney to handle the motion because "that [Assistant U.S. Attorney] is still reporting to the [Arizona] U.S. Attorney."

The Assistant U.S. Attorney "recognize[d] the [magistrate judge's] concerns," but reiterated that he could be "segregated off, do so ably, do so fairly, [and] do so consistent with [his] ethical obligation."

The magistrate judge then compared the situation to an internal investigation at a private company:

> [A]s I started looking at this issue, I kind of looked at it like an internal investigation when a corporation is accused of wrongdoing. When you have an internal investigation, you don't have in-house counsel doing that. You may have in-house counsel helping, but you retain outside counsel, and they report back to the government, for instance, in that context, were there errors? [W]hat were they? [A]nd what are we going to do about it? [A]nd I think that is the proper analysis to do in this case.

The magistrate judge then disqualified the entire Arizona U.S. Attorney's Office and ordered the government to obtain "firewall counsel" from another district or from Main Justice in Washington, D.C., to represent the government in the pending motions.

The government objected to the magistrate judge's verbal disqualification order in the district court. The district court upheld the order as "not contrary to law or clearly erroneous." The district court then set a deadline for the government's out-of-district "firewall counsel" to respond to the pending defense motions. In response, the government sought an interlocutory appeal and asked our court to stay the district court's deadline for firewall counsel to respond. A motions panel of this court stayed the deadline pending this appeal.

## II.

Before taking up the merits of the government's appeal, we must determine whether an interlocutory appeal is appropriate here. The government argues that we have jurisdiction over the disqualification order under the collateral order doctrine. In the alternative, the government contends we can assert jurisdiction by exercising mandamus authority. Because we are satisfied that the collateral order doctrine provides us jurisdiction here, we do not reach the government's alternative argument.

Under the collateral order doctrine, courts of appeal have jurisdiction to review "a small set of prejudgment orders that are collateral to the merits of an action and too important to be denied immediate review." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103 (2009) (simplified). "To fall within the limited scope of the collateral order doctrine, a district court order . . . must (1) be conclusive on the issue at hand; (2) resolve important questions separate from the merits; and (3) be effectively unreviewable after final judgment." *United States v. Acad. Mortg. Corp.*, 968 F.3d 996, 1002 (9th Cir. 2020) (simplified). Our application of these requirements is "stringent," and we should be reluctant to expand the doctrine. *Id*.

The disqualification order here satisfies the requirements of the collateral order doctrine. First, the order conclusively precludes the U.S. Attorney's Office from litigating the defendants' misconduct motions. As we've previously said, "the effect" of any attorney disqualification order "is fairly irreversible" because it "materially change[s]" the party's position. *In re Coordinated Pretrial Proc. in Petroleum Prods. Antitrust Litig.*, 658 F.2d 1355, 1357 (9th Cir. 1981). And, as a practical matter, a disqualification order is not

"subject to reconsideration from time to time." *Id.* (simplified). Here, that's proven true—the district court denied a motion to reconsider the order. Thus, the disqualification order was "clearly conclusive and not tentative" as it pertains to pending misconduct motions. *Hale v. Norton*, 476 F.3d 694, 699 (9th Cir. 2007).

Second, although the disqualification order does not resolve the guilt or innocence of Williams or his co-defendants, it determines an important question. An order is "important enough to merit immediate appellate consideration" when "delaying review would imperil a substantial public interest or some particular value of a high order." *Acad. Mortg. Corp.*, 968 F.3d at 1004 (simplified). Here, we must answer whether a court may properly prevent an entire U.S. Attorney's Office from defending itself against motions alleging the ethical impropriety of an individual Assistant U.S. Attorney. Considering the "special solicitude" owed to Executive branch prerogatives under the separation of powers, *Nixon v. Fitzgerald*, 457 U.S. 731, 743 (1982), our immediate review is warranted.

Third, the disqualification order will be effectively unreviewable. Orders are effectively unreviewable "when the legal and practical value of the asserted right will be destroyed if not vindicated before judgment." *AdTrader, Inc. v. Google LLC*, 7 F.4th 803, 808–09 (9th Cir. 2021) (simplified). Whether or not the government ultimately prevails on the misconduct motions here, the harm to the separation of powers cannot be remedied after a ruling on the defendants' charges. After a final judgment, it will be too late for our court to undo any improper encroachment on the Executive branch's prosecutorial prerogatives. If a trial results in an acquittal, then double jeopardy bars the government from appealing or re-prosecuting the case. *See*

*United States v. Greger*, 657 F.2d 1109, 1113 n.1 (9th Cir. 1981). And if the government obtains a guilty plea or verdict, it's unlikely we can rectify the situation because the government has already prevailed. *See United States v. Good Samaritan Church*, 29 F.3d 487, 488 (9th Cir. 1994).

On appeal, Williams argues that we should follow *Greger*, in which we held that the disqualification of *defense* counsel in a criminal matter was not immediately appealable. 657 F.2d at 1113. But, in that case, we expressly reserved judgment on the question here—whether disqualification of government counsel fits within the collateral order doctrine. *Id*. at 1113 n.1. And, unlike government counsel, the improper disqualification of a defense counsel is redressable on appeal after a guilty verdict. "[I]f the defendant is found guilty and on appeal attacks the order disqualifying his counsel, there is no reason why his right to counsel of choice cannot be vindicated on appeal." *Id*. at 1113. Williams concedes as much and fails to explain how the disqualification of the U.S. Attorney's Office can be remedied on appeal. And it makes little difference that disqualification was limited to the defendants' misconduct motions rather than the whole prosecution of the Western Hills Bloods. All the same issues—irreversibility, separation-of-powers concerns, and the lack of remedy—are implicated in the litigation of the pending motions.

We thus align ourselves with every other circuit to consider the question and hold that disqualification of an entire U.S. Attorney's Office warrants immediate appellate review under the collateral order doctrine. *See United States v. Bolden*, 353 F.3d 870, 874–78 (10th Cir. 2003); *United States v. Whittaker*, 268 F.3d 185, 192–93 (3d Cir. 2001); *United States v. Vlahos*, 33 F.3d 758, 761–62 (7th Cir.

1994); *United States v. Caggiano*, 660 F.2d 184, 189–90 (6th Cir. 1981).

## III.

We now turn to whether the district court properly disqualified the entire Arizona U.S. Attorney's Office from litigating the misconduct motions here. We review orders disqualifying counsel for abuse of discretion. *Petroleum Prods. Antitrust Litig.*, 658 F.2d at 1358. A district court abuses its discretion when it applies the incorrect legal standard or if its application of the correct legal standard was illogical, implausible, or without support from the facts in the record. *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1063 (9th Cir. 2022). Reversal is warranted when "the district court misperceives the law or does not consider relevant factors and thereby misapplies the law." *Petroleum Prods. Antitrust Litig.*, 658 F.2d at 1358.

## A.

Our Constitution divides federal power into three "defined" branches—the Legislative, the Executive, and the Judicial—to ensure "that each [b]ranch of government . . . confine[s] itself to its assigned responsibility." *INS v. Chadha*, 462 U.S. 919, 951 (1983). The Executive branch is charged with "tak[ing] Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. Thus, certain prosecutorial decisions are considered within the "special province of the Executive [b]ranch." *Heckler v. Chaney*, 470 U.S. 821, 832 (1985). Within the Executive branch, the U.S. Attorney's Office for each district is charged with "prosecut[ing] . . . all offenses against the United States." 28 U.S.C. § 547(1).

"The doctrine of separation of powers requires judicial respect for the independence of the prosecutor." *United States v. Simpson*, 927 F.2d 1088, 1091 (9th Cir. 1991). Such independence generally means that we do not "have a license to intrude into the authority, powers and functions" of prosecutors. *United States v. Jennings*, 960 F.2d 1488, 1491 (9th Cir. 1992) (simplified). To be sure, prosecutorial discretion is not absolute and may, at times, be subject to review. Indeed, "certain potentially vindictive exercises of prosecutorial discretion [are] both reviewable and impermissible." *Chaney*, 470 U.S. at 846 (Marshall, J., concurring) (discussing *Blackledge v. Perry*, 417 U.S. 21, 28 (1974)). *See Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978) ("There is no doubt that the breadth of discretion that our country's legal system vests in prosecuting attorneys carries with it the potential for both individual and institutional abuse. And broad though that discretion may be, there are undoubtedly constitutional limits upon its exercise."). In any event, "[a]bsent a violation of . . . the Constitution, a [federal] statute, or a procedural rule," *Jennings*, 960 F.2d at 1491, we do not dictate to the Executive branch who will serve as its prosecutors. Put differently, we do not stamp a "chancellor's foot veto over activities of coequal branches of government" unless compelled by the law to do so. *United States v. Gatto*, 763 F.2d 1040, 1046 (9th Cir. 1985) (simplified).

We run an even greater risk of offending separation-of-powers principles when disqualifying an entire office of Executive branch attorneys. Such sweeping interference is seldom warranted. Indeed, every circuit court that has reviewed an officewide disqualification has reversed. *See Bolden*, 353 F. 3d at 879; *Whittaker*, 268 F.3d at 194–95;

*Vlahos*, 33 F.3d at 761–63; *Caggiano*, 660 F.2d at 185. We briefly survey those decisions.

In *Bolden*, the Tenth Circuit reversed an order disqualifying the entire U.S. Attorney's Office based on allegations that the government showed bad faith in denying a defendant's request for a sentence reduction. 353 F.3d at 873. The Tenth Circuit concluded that the record didn't support such a "drastic measure." *Id.* at 878 (simplified). Given the separation-of-powers concerns involved, the Tenth Circuit observed that it "can only rarely-if-ever imagine a scenario in which a district court could properly disqualify an entire United States Attorney's office." *Id.* at 875. Instead, it regarded officewide disqualification as "almost always reversible error regardless of the underlying merits of the case." *Id.* Such a broad disqualification, the Tenth Circuit held, must be based "on clearly stated ethical violations for each attorney" and that courts "must make attorney-specific factual findings and legal conclusions" before ordering disqualification. *Id.* at 880. It then reversed the district court due to the "paucity of facts" indicating a conflict or misconduct in the disqualification order. *Id.* at 879. It also faulted the district court for failing to "even consider[] the separation[-]of[-]powers concerns implicated by . . . disqualification." *Id.* at 879.

In *Whittaker*, the Third Circuit reversed the disqualification of an entire U.S. Attorney's Office after a paralegal in the office inadvertently sent a target of investigation a letter identifying him as a victim in the same investigation. 268 F.3d at 187, 195–96. After being charged, the defendant moved to dismiss the indictment, alleging that the government was acting in bad faith by treating him as both a victim and a suspect in the same case.

*Id.* at 188. The district court declined to dismiss the indictment but disqualified the U.S. Attorney's Office from prosecuting the defendant. *Id.* at 188–90. Even though the district court found no bad faith on the prosecutor's part, it ordered the Attorney General to appoint an attorney from outside the U.S. Attorney's Office in the case. *Id.* at 191. The Third Circuit found it "perfectly clear that the district court had no basis to disqualify" the whole office. *Id.* at 194. The court emphasized that the defendant had not shown that the receipt of the letter "in any way prejudiced his defense," and the government's action was "simply . . . a mistake." *Id.* at 194. The Third Circuit reversed the district court's "unjustified conclusions," finding they lacked "all sense of proportion." *Id.* at 195–96.

In *Vlahos*, the Seventh Circuit reversed a district court's order disqualifying a U.S. Attorney's Office from prosecuting a criminal contempt charge. 33 F.3d at 763. After disqualifying two Assistant U.S. Attorneys for perceived conflicts of interest, the district court disqualified the entire U.S. Attorney's Office and appointed a private attorney to prosecute the matter. *Id.* at 761. On appeal, the Seventh Circuit found no basis to disqualify the entire office when nothing in the record showed that it was "ill-prepared or lacked sufficient ability to prosecute the case" or that the prosecutors had a conflict of interest. *Id.* at 762–63.

In *Caggiano*, the Sixth Circuit reversed an officewide disqualification after the U.S. Attorney's Office hired a defendant's attorney as a prosecutor. 660 F.2d at 185. After representing the defendant in criminal proceedings, the defendant's defense counsel accepted an offer to join the same U.S. Attorney's Office as an Assistant U.S. Attorney. *Id.* at 186–87. The defendant and his co-defendants moved to disqualify the entire U.S. Attorney's Office, alleging that

the hire created a conflict of interest. *Id.* at 186. Even though the U.S. Attorney's Office detailed plans to screen the former defense counsel from the prosecution, the district court granted the motion based on the "appearance of impropriety." *Id.* at 187–88. The Sixth Circuit disagreed. It emphasized the "difference in the relationship between law partners and associates in private law firms and lawyers representing the government," and thus held it was "not necessary or wise" to disqualify an entire government office after the conflicted attorney was "separated from any participation on the matters affecting his former client." *Id.* at 190–91 (simplified).

And while our circuit has yet to encounter an officewide disqualification, our caselaw shows that we would take an approach similar to our sister courts. In one case, we affirmed a district court's refusal to order officewide disqualification even after a defendant alleged that the U.S. Attorney himself had a personal conflict. *United States v. Lorenzo*, 995 F.2d 1448, 1452 (9th Cir. 1993). In that case, the U.S. Attorney and several Assistant U.S. Attorneys were victims of the defendant's tax scheme and testified against him at trial. *Id.* But we upheld the district court's refusal to disqualify the entire office because the defendant failed to show prejudice and there was no evidence that the "charges were brought because of the victimization of the U.S. Attorney himself" or that "the U.S. Attorney's Office did not exercise its discretionary function in an even-handed manner or that its zeal was not born of objective and impartial consideration of the merits of th[e] case." *Id.* at 1453. And elsewhere, we've held that defendants "must demonstrate prejudice from [a] prosecutor's potential conflict of interest" or present "clear and convincing evidence of prosecutorial misconduct" before a district court may disqualify a

prosecutor. *United States v. Kahre*, 737 F.3d 554, 574–75 (9th Cir. 2013).

Based on separation-of-powers principles and the consensus among courts, we believe disqualification of an entire U.S. Attorney's Office is an extreme remedy—only appropriate in the most extraordinary circumstances. Such extensive interference with Executive branch affairs demands "a clear basis in fact and law." *Gatto,* 763 F.2d at 1046 (quoting *United States v. Chanen*, 549 F.2d 1306, 1313 (9th Cir. 1977)). This is a two-part requirement. First, a district court must find a strong factual predicate for blanket disqualification. Second, a district court must determine that the U.S. Attorney's Office's continued representation of the government will result in a legal or ethical violation. These requirements mean a court must not only make specific findings against the accused prosecutors, but it must also determine that any misconduct or conflict so pervades the office that less intrusive remedies would be inadequate to safeguard against a legal violation. Only after the district court makes these exacting findings and legal conclusions will we uphold the disqualification of an entire office of a coequal branch. *Accord Bolden*, 353 F.3d at 880 ("[T]he district court must make attorney-specific factual findings and legal conclusions before disqualifying attorneys from the [U.S. Attorney's O]ffice."). As we've previously said, we will only "thwart the will" of the Executive branch when its "behavior is not in accordance with law." *Simpson*, 927 F.2d at 1091. We don't disqualify an entire office of federal prosecutors merely as a precautionary measure.

## B.

Applying these considerations, the district court's sweeping disqualification was an abuse of discretion.

Nothing in the magistrate judge's verbal order or the district court's reconsideration order provides a "clear basis in fact and law," *Gatto*, 763 F.2d at 1046 (simplified), to disqualify the entire U.S. Attorney's Office.  We thus reverse—for two reasons.

First, the facts do not support an officewide disqualification.  Williams's motions only alleged a conflict or misconduct involving one Assistant U.S. Attorney.  At the status conference, Williams's counsel admitted that the defendants did not know whether any ethical issues "extended beyond" that one prosecutor.  And without any evidence of officewide involvement, it was pure speculation to conclude that any conflict or misconduct pervaded the entire U.S. Attorney's Office.  Here, the magistrate judge "imagine[d]" that "th[e] case generally has gone up the food chain" to the Arizona U.S. Attorney.  But if the separation of powers means anything, it means we may not disqualify an entire office of a co-equal branch based on an assumption.  Indeed, even if the Arizona U.S. Attorney himself was aware of the allegations of misconduct, that alone may not justify disqualifying the whole office.  *See Lorenzo*, 995 F.2d at 1452.  Rather, "the generally accepted remedy," consistent with separation of powers concerns, "is to disqualify a specific Assistant United States Attorney, not all the attorneys in the office."  *Bolden*, 353 F.3d at 879 (simplified).

Second, no clear violation of law or ethics supports an officewide disqualification.  The district court did not conclude that the U.S. Attorney's Office's representation would lead to a legal or ethical violation.  While Williams's motions allege some eyebrow-raising contacts between the Assistant U.S. Attorney and Monteen's former attorney, the district court had yet to identify any "behavior . . . [of the

whole office] not in accordance with law." *Simpson*, 927 F.2d at 1091. It was therefore premature to resort to an officewide disqualification.

As noted above, any officewide disqualification of a U.S. Attorney's Office must respect the separation of powers. It does not appear that the district court sufficiently appreciated this concern. The magistrate judge's decision to disqualify was informed, in part, by a comparison to an internal investigation of a private company. "When you have an internal investigation," the magistrate judge observed, "you don't have in-house counsel doing that." But that analogy misses the mark. Disqualifying in-house counsel doesn't put courts in the constitutionally precarious position of overriding the will of the Executive branch without a basis in law or fact. This distinction makes all the difference.

## IV.

Before disqualifying an entire U.S. Attorney's Office, a district court must make specific factual findings that show that the office's continued representation would result in a clear legal or ethical violation. Because the record does not reveal pervasive misconduct or a blanket conflict here, we reverse the disqualification order. Given our resolution of this matter, we also deny defendants' motions to file their supplemental excerpts of record and answering brief under seal and ex parte. *See* Dkt. Nos. 56 & 58.

**REVERSED**.