24 A.3d 105

**Lee E. STEPHENS**

v.

**STATE of Maryland.**

**No. 114, Sept. Term, 2010.**

Court of Appeals of Maryland.

July 12, 2011.

496

A. Stephen Hut, Jr. (Ryan Huschka, Maureen P. Smith, Brenda E. Lee of WilmerHale, Washington, D.C.; Gary E. Proctor of Law Offices of Gary E. Proctor, Baltimore, MD; Michael E. Lawlor of Lawlor & Englert, LLC, Greenbelt, MD), on brief, for Appellant.

James E. Williams, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BARBERA, J.

Maryland Code (2002, 2010 Supp.), § 2–202(a)(3) of the Criminal Law Article ("CrL") forbids the imposition of the death penalty without the State having first presented to the jury or court, inter alia, biological or DNA evidence linking the defendant to the murder. We are asked in this appeal whether CrL § 2–202(a)(3) requires such a determination be made by a judge at a pre-trial evidentiary hearing, upon the request of the defendant. The resolution of that issue is of interest to Petitioner Lee E. Stephens, who has been indicted in the Circuit Court for Anne Arundel County, but not yet tried, on charges of first degree murder of Maryland House of Correction Officer David McGuinn and conspiracy to commit that crime. The State notified Petitioner of its intention to seek the death penalty and, in accordance with Maryland Code (1977, 2006 Repl.Vol.), § 10–915 of the Courts and Judicial Proceedings Article ("CP"), further informed Petitioner of the State's intention to introduce "DNA evidence that links the Defendant to the act of murder of David McGuinn." Petitioner sought a pre-trial evidentiary hearing to determine whether the State can produce at trial DNA evidence connecting him to the murder.

Upon the court's denial of that request, Petitioner noted an immediate appeal to the Court of Special Appeals. The State filed a motion to dismiss the appeal on the ground that the

appeal is an impermissible interlocutory appeal. The Court of Special Appeals denied the motion without prejudice, and docketed argument for April 2011.

Before briefing and argument in that court, we issued a writ of certiorari, on our initiative, to consider the case. We also issued a stay of further proceedings in the Circuit Court pending the outcome of the appeal. We heard argument in the case on April 8, 2011, and, on April 12, 2011, issued a per curiam order dismissing the appeal and vacating the stay. This opinion sets forth our reasons for dismissing the appeal.

## I.

On May 7, 2009, the General Assembly enacted Maryland Senate Bill 279, which altered Maryland's death penalty scheme. Of importance for our purposes, SB 279 added to CrL § 2-202(a), entitled *"Requirement for imposition,"* the following provision:

A defendant found guilty of murder in the first degree may be sentenced to death only if: . . . (3) the State presents the court or jury with:

(i) biological evidence or DNA evidence that links the defendant to the act of murder;

(ii) a video taped, voluntary interrogation and confession of the defendant to the murder; or

(iii) a video recording that conclusively links the defendant to the murder[.] [1]

---

1. CrL § 2-202, entitled "Murder in the first degree—Sentence of death[,]" provides in full:

    (a) *Requirement for imposition.*—A defendant found guilty of murder in the first degree may be sentenced to death only if:

    (1) at least 30 days before trial, the State gave written notice to the defendant of:

    (i) the State's intention to seek a sentence of death; and

    (ii) each aggravating circumstance on which the State intends to rely;

    (2) (i) with respect to § 2-303(g) of this title, except for § 2-303(g)(1)(i) and (vii) of this title, the defendant was a principal in the first degree; or

As mentioned, the State notified Petitioner that it intends to satisfy this provision by producing, at trial and/or sentencing, DNA evidence linking him to the murder.

On August 15, 2009, Petitioner filed a Motion to Preclude the Death Penalty on the ground that the death penalty statute as amended is unconstitutional. Petitioner later filed a Supplemental Memorandum on October 15, 2009, requesting a pre-trial "full evidentiary hearing" to determine whether, as a matter of law, there was DNA evidence linking him to the

(ii) with respect to § 2–303(g)(1)(i) of this title, a law enforcement officer, as defined in § 2–303(a) of this title, was murdered and the defendant was:

1. a principal in the first degree; or

2. a principal in the second degree who:

A. willfully, deliberately, and with premeditation intended the death of the law enforcement officer;

B. was a major participant in the murder; and

C. was actually present at the time and place of the murder;

(3) the State presents the court or jury with:

(i) biological evidence or DNA evidence that links the defendant to the act of murder;

(ii) a video taped, voluntary interrogation and confession of the defendant to the murder; or

(iii) a video recording that conclusively links the defendant to the murder; and

(4) the sentence of death is imposed in accordance with § 2–303 of this title.

(b) *Limitations.*—

(1) In this subsection, a defendant is "mentally retarded" if:

(i) the defendant had significantly below average intellectual functioning, as shown by an intelligence quotient of 70 or below on an individually administered intelligence quotient test and an impairment in adaptive behavior; and

(ii) the mental retardation was manifested before the age of 22 years.

(2) A defendant may not be sentenced to death, but shall be sentenced to imprisonment for life without the possibility of parole subject to the requirements of § 2–203(1) of this subtitle or imprisonment for life, if the defendant:

(i) was under the age of 18 years at the time of the murder; or

(ii) proves by a preponderance of the evidence that at the time of the murder the defendant was mentally retarded.

(c) *Limitations—State relies solely on eyewitness evidence.*—A defendant may not be sentenced to death, but shall be sentenced to imprisonment for life without the possibility of parole subject to the requirements of § 2–203(1) of this subtitle or imprisonment for life, if the State relies solely on evidence provided by eyewitnesses.

murder, thereby rendering him death penalty eligible under CrL § 2–202(a)(3)(i).[2] That motion and other unrelated issues came on for a hearing on October 19, 2009.

At that hearing, Petitioner argued that CrL § 2–202(a)(3) entitled him to a pre-trial hearing to determine whether "a jury could [ ] find in the light most favorable to the state that the DNA links [him] to the act of murder." Petitioner maintained that a pre-trial hearing to make that determination as a matter of law is consistent with the purpose behind CrL § 2–202(a)(3); moreover, a pre-trial hearing is, in Petitioner's words, "efficient, practical and would save time, money and effort later if the death penalty could not be applied." The State countered that CrL § 2–202(a)(3) does not contemplate a pre-trial evidentiary hearing.

The Circuit Court agreed with the State and orally denied Petitioner's request for a hearing. The court noted that "[t]here is no suggestion" in CrL § 2–202(a)(3) or "in logic" directing the court to decide "ahead of time" whether the State can present DNA evidence linking Petitioner to the crime; rather, "the sentencing authority ... has to make that decision."

This pre-trial ruling of the Circuit Court forms the basis of this appeal.

## II.

We do not reach the merits of the Circuit Court's pre-trial ruling denying Petitioner his requested hearing because that ruling is not one that permits an immediate appeal.

■■ "In Maryland, appellate jurisdiction, except as constitutionally created, is statutorily granted." *Schuele v. Case Handyman, LLC,* 412 Md. 555, 565, 989 A.2d 210, 215 (2010). The general rule is that an appeal will lie only from a final judgment. *See* Md.Code (1974, 2006 Repl.Vol.), § 12–301 of

---

**2.** The State's notice did not include a reference to "biological evidence" or either of the other statutory qualifications for imposition of the death penalty that are set forth in CrL § 2–202(a)(3).

the Courts and Judicial Proceedings Article ("CP") (authorizing appeals from "a final judgment entered in a civil or criminal case"). In a criminal case, "no final judgment exists until after conviction and sentence has been determined, or, in other words, when only the execution of the judgment remains." *Harris v. State,* 420 Md. 300, 22 A.3d 886 (2011) (quoting *Sigma Reprod. Health Ctr. v. State,* 297 Md. 660, 665, 467 A.2d 483, 485 (1983)).

Petitioner does not contend that the present appeal is from a final judgment and indeed it is not, as the case remains active in the Circuit Court. Neither does he contend that there is any other statutory right of appeal from this obviously interlocutory ruling. Petitioner argues, instead, that the ruling of the Circuit Court comes within what is known as the "collateral order doctrine."

▇▇▇▇ Maryland's collateral order doctrine has its roots in the important policy underlying the final judgment rule, which is to "prevent piecemeal appeals and . . . the interruption of ongoing judicial proceedings." *Sigma Reprod. Health Ctr.,* 297 Md. at 665, 467 A.2d at 485. The doctrine "is very limited," *Walker v. State,* 392 Md. 1, 15, 895 A.2d 1024, 1033 (2006), and permits the immediate appeal of only a "narrow class of orders" that are "offshoots of the principal litigation in which they are issued" and are considered "final judgments without regard to the posture of the case," *Jackson v. State,* 358 Md. 259, 266–67, 747 A.2d 1199, 1203 (2000) (internal quotation marks and citation omitted). To come within the collateral order doctrine, the order sought to be reviewed must be one that:

> "(1) conclusively determines the disputed question, (2) resolves an important issue, (3) resolves an issue that is, completely separate from the merits of the action, *and* (4) would be effectively unreviewable if the appeal had to await the entry of a final judgment."

*In re Foley,* 373 Md. 627, 633, 820 A.2d 587, 591 (2003) (quoting *Pittsburgh Corning Corp. v. James,* 353 Md. 657, 660–61, 728 A.2d 210, 211–12 (1999)). The four requirements

"are conjunctive in nature" and each must be satisfied in order for a prejudgment order to constitute a collateral order. *In re Franklin P.,* 366 Md. 306, 327, 783 A.2d 673, 686 (2001); *see also Jackson,* 358 Md. at 267, 747 A.2d at 1203. All four requirements "are very strictly applied, and appeals under the doctrine may be entertained only in extraordinary circumstances." *Foley,* 373 Md. at 634, 820 A.2d at 591 (collecting cases in which this Court has dismissed appeals for failing to satisfy all four requirements of the collateral order doctrine).

### III.

The State contends that the pre-trial ruling at issue here does not satisfy any, much less all, of the four requirements of the collateral order doctrine. It is unnecessary, though, to consider whether the court's denial of the requested pre-trial evidentiary hearing would conclusively determine a disputed question or resolve an important issue (the first two requirements of the collateral order doctrine), because the ruling at issue does not satisfy the third and fourth requirements. *See Bunting v. State,* 312 Md. 472, 477, 540 A.2d 805, 807 (1988) (per curiam) (declining to consider whether the challenged order satisfied the first three requirements of the collateral order doctrine because the order failed the fourth requirement).

We begin with the third requirement of the collateral order doctrine—that the order appealed from is completely collateral to and separate from the merits of the underlying case. Petitioner sought a pre-trial determination, upon a full evidentiary hearing, of whether the State possesses DNA evidence sufficient to link him to the murder of Correctional Officer McGuinn. Far from being "completely separate from" the case that is yet to be tried, the evidence sought at the requested pre-trial hearing not only is intimately tied to whether Petitioner is guilty of the charged murder, but is particularly pertinent, if he is found guilty of the crime, to

whether he is subject to imposition of the death sentence.[3] *Cf. Falik v. Hornage,* 413 Md. 163, 177, 991 A.2d 1234, 1243 (2010) (Discovery orders "do not comply with the third requirement of the collateral order doctrine, as they generally are not completely separate from the merits of the lawsuit. Instead, a typical discovery order is aimed at ascertaining critical facts upon which the outcome of the ... controversy might depend." (Quoting *St. Joseph Med. Ctr., Inc. v. Cardiac Surgery Assocs.,* 392 Md. 75, 87, 896 A.2d 304, 311 (2006))).

The ruling at issue here is much like a ruling denying a motion to dismiss a charging document on the ground that the prosecution violates the Sixth Amendment right to a speedy trial. The Supreme Court has held that the latter ruling is not subject to an immediate appeal under the collateral order doctrine, because, inter alia, such rulings "necessitate[ ] a careful assessment of the particular facts of the case[ ]" and "are best considered only after the relevant facts have been developed at trial." *United States v. MacDonald,* 435 U.S. 850, 858, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978). We have held likewise. *See Stewart v. State,* 282 Md. 557, 571–72, 386 A.2d 1206, 1213 (1978) (applying *MacDonald* to hold that no immediate appeal will lie from an order denying a Maryland defendant's motion to dismiss for a speedy trial violation, under either the federal Constitution or Article 21 of the Maryland Constitution).

It is equally obvious that the Circuit Court's pre-trial ruling does not satisfy the fourth requirement of the collateral order doctrine—that the order would be effectively unreviewable if appellate review was delayed until after final judgment.

---

3.  CrL § 2–202(a) provides that "A defendant found guilty of murder in the first degree may be sentenced to death only if: ... (3) the State presents the court or jury with:

    (i) biological evidence or DNA evidence that links the defendant to the act of murder;

    (ii) a video taped, voluntary interrogation and confession of the defendant to the murder; or

    (iii) a video recording that conclusively links the defendant to the murder[.]

We have explained that this requirement is met in " 'very few [and] extraordinary situations. Otherwise, . . . there would be a proliferation of appeals under the collateral order doctrine.' " *Foley*, 373 Md. at 636, 820 A.2d at 593 (quoting *Bunting*, 312 Md. at 482, 540 A.2d at 809).

By its plain language, CrL § 2–202(a)(3) bars the imposition of the death penalty without the State having first presented to the jury or court evidence of at least one of the death penalty eligibility criteria listed in subsection (a)(3). Petitioner's right to insist upon compliance with the statute will not be hindered or undermined by awaiting final judgment to secure appellate review of the matter. Should it happen that Petitioner is convicted of first degree murder and the sentence of death is imposed, he will have the right to challenge on appeal whether the State failed to present to the jury or court the DNA evidence the State claims it has in its possession. Should it also happen that Petitioner prevails on such a claim on appeal, he would be entitled to have the death sentence vacated and a lawful sentence imposed, on remand. There is no question, therefore, that the claim may be reviewed effectively on appeal.

For all the reasons we have discussed, we reject Petitioner's attempt to draw an analogy between the right afforded by CrL § 2–202(a)(3) and the protection afforded criminal defendants under the Double Jeopardy Clause. The right to an immediate appeal from the denial of a motion to dismiss a charging document on the ground that it was brought in violation of double jeopardy principles lies in the "serious risk of irreparable loss of the claimed right if appellate review is deferred until after final judgment." [4] *Parrott v. State*, 301

---

4. The Supreme Court explained in *Abney v. United States*, 431 U.S. 651, 659–61, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) that a ruling denying a claimed violation of the Double Jeopardy Clause comes within the collateral order doctrine because the ruling constitutes a final rejection of the claim, the issue is entirely collateral to and separable from the issue of guilt or innocence, and most significantly, delay in appellate review until after a final judgment would undermine the very right

Md. 411, 424–25, 483 A.2d 68, 75 (1984) (per curiam). Not so with regard to the right afforded by CrL § 2–202(a)(3), which, akin to the right to a speedy trial, must await appellate review following final judgment.

We explained in *Parrott* why the distinction between the rights accorded under the double-jeopardy and speedy-trial clauses dictates the different outcomes in a collateral-order-doctrine analysis:

> Implicit in the prohibition against double jeopardy is a right to be free from the ordeal of the second trial itself. That aspect of the right can never be restored by reversing a conviction after the second trial on the grounds that the second trial violated double jeopardy principles. On the other hand the right to a speedy trial can be vindicated by reversal after conviction. Neither the speedy trial clause of the Sixth Amendment nor the speedy trial clause found in art. XXI of the Maryland Declaration of Rights suggests "that a defendant enjoys a 'right not to be tried' which must be safeguarded by interlocutory appellate review."

*Id.* at 425, 483 A.2d at 75 (quoting *MacDonald*, 435 U.S. at 860 n. 7, 98 S.Ct. 1547).

■ Petitioner argues that CrL § 2–202(a)(3) grants criminal defendants the guarantee against having to "run the gauntlet" of a capital trial without a pre-trial determination of whether at least one of the three death penalty eligibility criteria set forth in that subsection can be satisfied. It follows, argues Petitioner, that delay of appellate review of the denial of pre-trial consideration of such a claim until after conviction and sentencing would render the ruling effectively unreviewable, because, at that point, he would have endured the very capital trial that he believes CrL § 2–202(a)(3) is designed to prevent.

CrL § 2–202(a)(3) does not grant a defendant the right not to endure a capital trial. Rather, the subsection grants a

---

accorded by the double jeopardy prohibition, that is, the "guarantee against being twice put to *trial* for the same offense."

defendant the right not to have the death penalty imposed, upon a finding of guilt of first degree murder, unless the State has supplied the sentencing agent (jury or court) with, inter alia, DNA evidence linking the defendant to the murder. The words of the *MacDonald* Court, repeated by us in *Parrott*, are instructive in this regard:

> "Admittedly, there is value—to all but the most unusual litigant—in triumphing before trial, rather than after it, regardless of the substance of the winning claim. But this truism is not to be confused with the quite distinct proposition that certain claims (because of the substance of the rights entailed, rather than the advantage to a litigant in winning his claim sooner) should be resolved before trial. Double jeopardy claims are paradigmatic."

*Id.* at 425, 483 A.2d at 75 (quoting *MacDonald*, 435 U.S. at 860 n. 7, 98 S.Ct. 1547). This or similar analysis has led us to reject the claim that the denial of a removal under art. IV is immediately appealable, and to hold that the "grant or denial" of such removal "is not within that narrow class of cases excepted from the final judgment requirement." *See id.*, 483 A.2d at 75; *see also Bunting*, 312 Md. at 478, 540 A.2d at 807 (upholding the Court of Special Appeals' dismissal of the defendant's immediate appeal from an adverse ruling brought under the Interstate Agreement on Detainers, and in doing so, rejecting the defendant's argument that, "[b]y analogy to the double jeopardy cases," the Interstate Agreement "prescribes the remedy of dismissal for violations of the single transfer rule," giving him "a right not to stand trial"); *accord United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 270, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982) (stating that the collateral order doctrine does not embrace an order declining to dismiss an indictment on the ground of prosecutorial vindictiveness because it "is simply not [a right] that must be upheld prior to trial if it is to be enjoyed at all").

Only in the rarest of circumstances do we indulge a contention that an asserted right includes the right to avoid trial altogether, such that it would be effectively unreviewable on appeal from final judgment. We made the point in *Bunting:*

> Another difficulty with the defendant's argument is that numerous "rights" can readily be characterized as entitling a party to avoid trial under some circumstances. For example, the "right" to summary judgment might be characterized as a right not to stand trial unless the opposing party has created a genuine issue of material fact. Similarly, the statute of limitations might be characterized as granting a defendant a right not to be tried out of time. If all "rights" which could be characterized in this manner were treated like the right against double jeopardy, the collateral order doctrine would largely erode the final judgment rule. *Consequently, it is important that we narrowly construe the notion of an entitlement not to be sued or prosecuted.*

*Bunting,* 312 Md. at 479–80, 540 A.2d at 808 (internal citations omitted) (emphasis added).

We have not retreated from this pronouncement in *Bunting. See, e.g., Dawkins v. Baltimore City Police Dept.,* 376 Md. 53, 61, 827 A.2d 115, 119 (2003) (discussing *Bunting* and holding that interlocutory trial court orders rejecting defenses of common law sovereign immunity, governmental immunity, public official immunity, statutory immunity, or any other type of immunity, generally do not come within the collateral order doctrine); *Pittsburgh Corning,* 353 Md. at 666, 728 A.2d at 214 ("As we pointed out in *Bunting* and confirmed in *Shoemaker* [*v. Smith,* 353 Md. 143, 725 A.2d 549 (1999)], the proffered right to avoid trial, either at all or in a particular forum, cannot be allowed to be the tail that wags the final judgment rule dog[.]"); *Smith,* 353 Md. at 170, 725 A.2d at 563 (explaining that "*Bunting* makes clear that the claimed right of immunity from trial itself does not suffice to satisfy the 'unreviewability' requirement of the collateral order doctrine except in 'extraordinary situations'"; and stating that "[w]e do not regard the denial of a motion for summary judgment asserting the qualified immunity of a deputy sheriff charged with maliciously committing common law torts as an 'extraordinary situation'"). Petitioner has not persuaded us to divert

from the very narrow scope of the collateral order doctrine, as expressed in *Bunting* and followed ever since.

In sum, given the nature and purpose of CrL § 2–202(a)(3), "[t]he justification for immediate appeal [is not] sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes." *Mohawk Indus., Inc. v. Carpenter,* 558 U.S. ——, 130 S.Ct. 599, 605, 175 L.Ed.2d 458 (2009). We hold that post-judgment appeals will suffice to ensure fulfillment of the protections afforded criminal defendants by CrL § 2–202(a)(3). Accordingly, consistent with our order dated April 20, 2011, the appeal is dismissed.

**APPEAL DISMISSED. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**