*State of Maryland v. James S. Houston*, No. 37, September Term, 2025.

**APPELLATE JURISDICTION – COLLATERAL ORDER DOCTRINE – DISQUALIFICATION OF STATE'S ATTORNEY**

This appeal arises in the context of a murder trial in which the defendant was accused of murdering his then-wife with a knife. Police called to the scene found the defendant and his wife in a pool of blood, both with stab wounds, with one knife still in the wife and a second knife in between the bodies. The defendant claims self-defense. The circuit court concluded that the State's Attorney for Anne Arundel County was likely to be a necessary witness in the case as a result of her interviewing several witnesses with no investigators or other prosecutors present. One of those witnesses told the State's Attorney that, at some point before the incident at issue, the defendant had told the witness that the defendant's wife had "pulled a knife" on him. The circuit court ordered the disqualification of the State's Attorney as lead prosecutor in the case. The State appealed. Under those circumstances, the Supreme Court held that the interlocutory disqualification order was not immediately appealable under the collateral order doctrine because the order is not completely separate from the merits.

**APPELLATE JURISDICTION – COLLATERAL ORDER DOCTRINE – FIREWALL OF STATE'S ATTORNEY**

In connection with the disqualification order, the circuit court ordered that because the State's Attorney would be a witness in the case, she could not participate in the case in any way other than as a witness. The court ordered the erection of a firewall between the State's Attorney and all members of her office concerning the prosecution of this case, with very narrow exceptions. Under those circumstances, the Supreme Court held that the interlocutory firewall order was immediately appealable under the collateral order doctrine.

IN THE SUPREME COURT

OF MARYLAND

No. 37

September Term, 2025

_____

STATE OF MARYLAND

v.

JAMES S. HOUSTON

_____

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

_____

Opinion by Fader, C.J.

_____

Filed: March 20, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

We consider the appealability under the collateral order doctrine of interlocutory orders that:  (1) disqualified the Anne Arundel County State's Attorney from participating as an attorney in this criminal prosecution; and (2) imposed a "firewall" between the State's Attorney and her staff working on the case.  The State appealed to the Appellate Court of Maryland, which dismissed the appeal for lack of jurisdiction.

Interlocutory orders are not ordinarily appealable until there is a final judgment.  However, an interlocutory order is treated as final under the collateral order doctrine if it "(1) conclusively determines the disputed question, (2) resolves an important issue, (3) resolves an issue that is completely separate from the merits of the action, and (4) would be effectively unreviewable if the appeal had to await the entry of a final judgment." *In re M.P.*, 487 Md. 53, 68 (2024) (quoting *Stephens v. State*, 420 Md. 495, 502 (2011)).

We hold that the court's disqualification of the State's Attorney fails the third prong of this test because it does not resolve an issue that is completely separate from the merits.  The court's order mandating a firewall between the State's Attorney and her staff, however, satisfies all four prongs of the collateral order doctrine and is appealable.  We will therefore affirm in part and reverse in part the decision of the Appellate Court and remand this case to that court for further proceedings.

## BACKGROUND

This appeal stems from the homicide of Nancianne Houston by her husband, James Houston.  Three weeks before the resulting murder trial was scheduled to begin, upon revelation of an apparent discovery violation, the Circuit Court for Anne Arundel County

held a hearing that led to the interlocutory orders under review. The following background narrative is drawn from the testimony of the witnesses at that hearing.

### A. The Homicide and Initial Investigation

Sometime in 2023, Mr. Houston allegedly told his friend, Steven Valladares, that Ms. Houston had previously "pulled a knife" on him (Mr. Houston). That statement is at the center of this appeal.

In August 2024, in response to a 911 call from Mr. Houston, officers arrived at Mr. Houston's apartment and found him and Ms. Houston lying in a pool of blood, both with multiple knife wounds. Ms. Houston had a knife in her chest and a second knife was lying between the Houstons. Officers pronounced Ms. Houston dead at the scene. Mr. Houston survived.

As part of the homicide investigation, Detective George Davis and another detective interviewed Mr. Valladares in a squad car. In the recorded interview, Mr. Valladares discussed a prior domestic dispute between the Houstons, but did not mention Mr. Houston's previous statement about Ms. Houston pulling a knife on him.

The State charged Mr. Houston with first-degree murder and related crimes. Trial was scheduled to begin on May 23, 2025. State's Attorney Anne Colt Leitess was the lead prosecutor in the case. Mr. Houston planned to argue self-defense.

### B. The Phone Call and Pretrial Hearing

Seven weeks before the scheduled trial date, on April 1, 2025, the State's Attorney made a series of calls to interview possible witnesses. Among the "10 to 15" witnesses she

2

interviewed was Mr. Valladares.  The State's Attorney did not involve anyone else in that or any of the other interviews.

In his call with the State's Attorney, Mr. Valladares mentioned that shortly after his August 2024 recorded interview, he had a follow-up call with a detective in which he relayed three pieces of information that he had not previously shared:  (1) Ms. Houston had moved money from individual bank accounts into joint accounts; (2) Mr. Houston had worn "body cameras" during some interactions with Ms. Houston; and (3) Mr. Houston had told him in 2023 that Ms. Houston had previously "pulled a knife" on Mr. Houston. The identity of the police officer to whom Mr. Valladares conveyed that information is not entirely clear.  However, Lead Detective Justin Downey received the information about the body cameras and incorporated it into a contemporaneous search warrant application for Mr. Houston's apartment.  None of the State's documents reflect any knowledge of Mr. Valladares's statement about the knife incident before April 2025.

Following the April 1, 2025 call, the State's Attorney did not disclose Mr. Valladares's statement about the knife incident to defense counsel.  Mr. Valladares, however, called defense counsel later that day and told defense counsel about his call with the State's Attorney and the statement he gave regarding the knife incident.

The court held a motions hearing on April 29, 2025, nearly a month after the State's Attorney's call with Mr. Valladares.  During the hearing, defense counsel informed the court about Mr. Valladares's calls and the State's Attorney's failure to share with defense counsel the information Mr. Valladares had conveyed to her.  Defense counsel argued that

3

the statement about the knife incident was plainly exculpatory and relevant to Mr. Houston's self-defense trial theory. In response, the State's Attorney expressed doubts about Mr. Valladares's credibility and said that she had confirmed with the detectives that the only information Mr. Valladares had relayed after the recorded interview concerned the body cameras. The State's Attorney also stated that she had instructed Detective Downey to interview Mr. Valladares about his claims "[s]o that I wouldn't make myself a witness[.]" She claimed to have "followed up with Detective Downey several times" about interviewing Mr. Valladares. As of the date of the hearing, Detective Downey had not done so.

On May 5 and 6, 2025, now less than three weeks away from the scheduled trial date, the circuit court conducted "a fact finding expedition" on the discovery issue. The court heard testimony from Mr. Valladares, State's Attorney Leitess, Detective Downey, and Detective Davis, among others. We need not review in detail the evidence from that proceeding to resolve the issue here. It is sufficient to note that the testimony was contentious, and witnesses contradicted each other concerning several issues, including what Mr. Valladares shared during his follow-up call with a detective, the content and tone of the conversation between Mr. Valladares and the State's Attorney, and the State's Attorney's actions following that conversation.

### C. The Circuit Court's Orders

In a comprehensive oral decision, the circuit court concluded that the State's Attorney's lack of disclosure constituted a discovery violation and a violation of the

4

constitutional obligation to disclose exculpatory information under *Brady v. Maryland*, 373 U.S. 83 (1963). The court also aired broad "frustrati[on]" with the proceedings. The court expressed skepticism about testimony from the State's Attorney and the detectives on several topics, including the State's Attorney's reasons for not disclosing the information to defense counsel, her practice of interviewing witnesses without anyone else present, her communications with the detectives, and Detective Downey's testimony about why he could not verify statements about his communications with the State's Attorney.

Ultimately, the court ruled that by interviewing Mr. Valladares and other witnesses without an investigator present, the State's Attorney had improperly made herself a witness in the case. The court invoked the advocate-witness rule, Maryland Rule 19-303.7, which provides that an attorney ordinarily "shall not act as advocate at a trial in which the attorney is likely to be a necessary witness." As a remedy, the court issued several orders. As relevant here, the court: (1) disqualified the State's Attorney as counsel in the case; and (2) required "a complete and absolute firewall" between "the assistants who will prosecute this case and" the State's Attorney. The court permitted only two exceptions to the firewall. First, the court allowed the State's Attorney to meet with another prosecutor, so long as "two other persons [were] present," to hand off her preparation for an upcoming motion *in limine* hearing. Second, the court allowed the State's Attorney to participate in discussing which other prosecutors would be assigned to the case, but only at the level of "availability" based on "trial schedules," not any "strategic considerations" or "substantive[]" discuss[ion]" of the case.

5

During a separate hearing three days later, the circuit court explained further its basis for imposing the firewall. The court explained that because it had concluded that the State's Attorney was a witness, "she has to be treated like a witness in every way." And just as it would be improper to give "an outside person" who was a witness in the case access to the prosecution's files and involve them in trial preparation, "[i]t would be wildly inappropriate" for the State's Attorney to have similar access and involvement. According to the court, "Ms. Leitess is a witness. And that just means that everything flows from that. She cannot . . . involve herself in the case digitally, remotely through third persons, or otherwise."

## D. Appellate Court of Maryland

The State appealed. Mr. Houston moved to dismiss the appeal on the ground that the circuit court's orders are not appealable final orders.[1] The State argued that they are appealable under the collateral order doctrine. The Appellate Court's opinion dismissing the appeal primarily addresses the disqualification order, as to which that court found "no serious question" that three of the four elements of the collateral order doctrine were satisfied, because the order conclusively determined the disputed question, resolved an important issue, and would be effectively unreviewable on appeal. *State v. Houston*, No. 513, Sept. Term, 2025, 2025 WL 1603439, at *2 (Md. App. Ct. June 3, 2025).

---

[1] The circuit court discussed the disqualification and firewall directives together. The parties discuss them as separate orders. Whether they are two directives within a single order or separate orders is irrelevant to our resolution of this appeal. For clarity, we will refer to them separately as the disqualification order and the firewall order.

Focusing on the remaining requirement—that the issue be "completely separate from the merits"—the court considered how a reviewing court would be able to assess the circuit court's conclusion that the State's Attorney was likely to be a necessary witness. *Id.* at *2-3. Mr. Houston argued that, if the State attacked Mr. Valladares's credibility, he could "respond to such an attack by calling the State's Attorney to have her affirm that Mr. Valladares made 'a prior consistent statement' to her in their telephone conversation." *Id.* at *4. In exploring that argument, the court laid out the "evidentiary preconditions" that could make the State's Attorney's testimony admissible:

> Mr. Valladares's hearsay statement about what Dr. Houston allegedly told him will be admissible under an exception to the general prohibition against hearsay only if (1) Dr. Houston first testifies that his wife once pulled a knife on him and (2) the defense establishes that Dr. Houston told Mr. Valladares that his wife once pulled a knife on him at some point before the homicide— i.e., at some point before Dr. Houston's motive to fabricate arose. If Dr. Houston does not testify, or if the defense cannot establish that the alleged conversation occurred before the motive to fabricate arose, then Mr. Valladares's statement is inadmissible hearsay.

*Id.* at *3-4 (citations omitted).

Based on that analysis, the court expressed skepticism that the State's Attorney had likely made herself a necessary witness.[2] Nevertheless, the court concluded that its "analysis of these issues shows that the question of whether the State's Attorney is likely to be a necessary witness is not completely separate from the merits." *Id.* at *4. The court

---

[2] In his concurrence, Judge Stephen Kehoe concluded that he could "find nothing in the record that would indicate that Ms. Leitess [the State's Attorney] made herself a witness in the case." *Houston*, 2025 WL 1603439, at *5 (Kehoe, J., concurring).

7

did not believe it could "evaluate whether the State's Attorney is likely to be a necessary witness at trial without evaluating how the trial might progress, how the several witnesses might testify, and how the court might rule on various evidentiary issues." *Id.* Accordingly, the court concluded that the order did not satisfy the collateral order doctrine, and the court granted Mr. Houston's motion to dismiss.[3] *Id.* at *5. The Appellate Court did not separately address the appealability of the firewall order.

The State petitioned for a writ of *certiorari* asking this Court to consider whether the circuit court orders disqualifying the State's Attorney and mandating a firewall between her and others in her office are appealable. Mr. Houston cross-petitioned asking this Court to review the merits of the circuit court's orders. This Court granted the State's petition and denied Mr. Houston's cross-petition. *State v. Houston*, 492 Md. 412 (2025).

## DISCUSSION

### I.    STANDARD OF REVIEW

Whether an interlocutory order is appealable "under the collateral order doctrine, is a question of law that an appellate court reviews" without deference. *Monarch Acad. Baltimore Campus, Inc. v. Baltimore City Bd. of Sch. Comm'rs*, 457 Md. 1, 40 (2017).

---

[3] The Appellate Court also addressed the circuit court's conclusion that, in addition to committing a discovery violation, the State had also violated its constitutional obligation to turn over exculpatory materials under *Brady*, 373 U.S. 83. The Appellate Court noted that Mr. Houston "correctly conceded" on appeal that the State did not commit a *Brady* violation because (1) Mr. Houston theoretically should have known that he himself had said something and (2) Mr. Houston learned of the information from another source in time to use it at trial. *Houston*, 2025 WL 1603439, at *3 n.4.

8

## II. APPELLATE JURISDICTION PRINCIPLES

The Appellate Court's power to decide appeals is derived from statute: "a party may appeal from a final judgment entered in a civil or criminal case by a circuit court." Md. Code Ann., Cts. & Jud. Proc. § 12-301 (2020 Repl.). An order is generally not a "final judgment" unless it fully adjudicates all claims in the case by and against all parties to the case. *Monarch Acad.*, 457 Md. at 42-44.

An interlocutory order—any order that is not a final judgment—ordinarily is not appealable until there is a final judgment. "[T]he primary purpose of the final judgment rule is to prevent piecemeal appellate review of trial court decisions which do not terminate the litigation. By requiring litigants to consolidate all claims of error at the end of a lawsuit, the rule eliminates a succession of separate appeals which would repeatedly interrupt and delay lower court proceedings." *Harris v. David S. Harris, P.A.*, 310 Md. 310, 314-15 (1987).

We have recognized three "exceptions" to the final judgment rule: (1) "appeals from interlocutory orders specifically allowed by statute;" (2) "immediate appeals permitted under Maryland Rule 2-602;" and (3) the collateral order doctrine. *Addison v. Lochearn Nursing Home, LLC*, 411 Md. 251, 273-74 (2009). The collateral order doctrine is not technically an exception to the final judgment rule; rather, it is "a judicially created fiction, under which certain interlocutory orders are considered to be final judgments, even though such orders clearly are *not* final judgments." *Dawkins v. Baltimore City Police Dep't*, 376 Md. 53, 64 (2003).

The collateral order doctrine allows an immediate appeal to be taken from a "very limited" class of non-final, interlocutory orders that are "offshoots of the principal litigation in which they are issued" and that qualify, in effect, as "final judgments without regard to the posture of the case[.]" *Stephens v. State*, 420 Md. 495, 502 (2011). To be appealable under the collateral order doctrine, an order must "(1) conclusively determine[] the disputed question, (2) resolve[] an important issue, (3) resolve[] an issue that is completely separate from the merits of the action, and (4) [] be effectively unreviewable if the appeal had to await the entry of a final judgment." *In re M.P.*, 487 Md. 53, 68 (2024) (quoting *Stephens*, 420 Md. at 502). Courts "apply these elements 'very strictly' in keeping with the narrow nature of the exception, which should apply 'only in extraordinary circumstances.'" *Id.* (quoting *Stephens*, 420 Md. at 503).

Application of the collateral order doctrine is particularly limited in criminal cases, where the final judgment rule is "at its strongest." *Flanagan v. United States*, 465 U.S. 259, 264 (1984) (quoting *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265 (1982)). That is because "encouragement of delay is fatal to the vindication of the criminal law." *United States v. MacDonald*, 435 U.S. 850, 854 (1978) (quoting *Cobbledick v. United States*, 309 U.S. 323, 325 (1940)). Permitting interlocutory appeals too loosely implicates the defendant's and public's interests in a speedy trial, *see Carroll v. United States*, 354 U.S. 394, 415 (1957) ("Delays in the prosecution of criminal cases are numerous and lengthy enough without sanctioning appeals that are not plainly authorized by statute."), and increases the danger of prosecutorial harassment, *see Arizona v.*

10

*Manypenny*, 451 U.S. 232, 246 (1981) ("The need to restrict appeals by the prosecutor reflected a prudential concern that individuals should be free from the harassment and vexation of unbounded litigation by the sovereign.").

## III.   ANALYSIS

### A.   The Collateral Order Doctrine and Disqualification Orders in Other Contexts

The collateral order doctrine generally does not authorize an immediate appeal of an order disqualifying defense counsel in a criminal case, *see Flanagan*, 465 U.S. at 260, 270, or an order disqualifying a plaintiff's or a defendant's counsel in a civil case, *see Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 440 (1985); *Harris*, 310 Md. at 312, 316. In *Flanagan*, the Supreme Court of the United States reasoned that an order disqualifying defense counsel in a criminal case would necessarily fail either the requirement that the order be entirely separate from the merits or the requirement that it be effectively unreviewable on appeal. 465 U.S. at 268. The Court explained that if no showing of prejudice from the disqualification were required on appeal, then, like most other pre-trial rulings, such an order would not be effectively unreviewable on appeal from a final judgment. *Id.* On the other hand, if the defendant would have to prove prejudice to prevail, then the order "is not independent of the issues to be tried," because "[i]ts validity cannot be adequately reviewed until trial is complete." *Id.* Either way, one prong of the collateral order doctrine test could not be satisfied.

In *Richardson-Merrell*, the Supreme Court applied that same reasoning in the civil context. 472 U.S. at 438. The Court "conclude[d] that, if establishing a violation of one's

right to counsel of choice in civil cases requires no showing of prejudice, then 'a pretrial order violating the right . . . is not effectively unreviewable on appeal from a final judgment.'" *Id.* (quoting *Flanagan*, 465 U.S. at 268 (citation modified)). On the other hand, if a party whose attorney is disqualified must show prejudice from the disqualification, the order "is not independent of the issues to be tried[,]" because only after trial could a court assess the effect of the ruling on the final judgment. *Richardson-Merrell*, 472 U.S. at 439. In other words, "the disqualification ruling would be inextricably tied up in the merits." *Id.*

The Court further concluded that orders disqualifying counsel in civil cases are not completely separate from the merits for the additional reason that they will ordinarily require a reviewing court to delve into the merits of the case. *Id.* Notably here, the Court provided the following example: "Orders disqualifying attorneys on the ground that they should testify at trial, for example, are inextricable from the merits because they involve an assessment of the likely course of the trial and the effect of the attorney's testimony on the judgment." *Id.*

In *Harris*, we reached the same result as the Supreme Court in *Richardson-Merrell*, but our analysis was different. We determined that we *would* presume prejudice from an erroneous order disqualifying counsel in a civil case and, therefore, that such an order would be "subject to effective postjudgment review." *Harris*, 310 Md. at 320. Accordingly, we held that such an order would fail the fourth prong of the collateral order

doctrine test. *Id.* at 318. Because that holding was dispositive, we declined to assess whether such an order would have satisfied the remaining prongs of the test. *Id.*

## B. The Collateral Order Doctrine and Orders Disqualifying Prosecutors

Relatively few courts have considered whether orders disqualifying prosecutors in criminal cases are appealable under the collateral order doctrine. Of those that have, most have done so in the context of orders disqualifying an entire United States Attorney's office, not just a single prosecutor. *See United States v. Williams*, 68 F.4th 564, 567 (9th Cir. 2023); *United States v. Bolden*, 353 F.3d 870, 874-78 (10th Cir. 2003); *United States v. Whittaker*, 268 F.3d 185, 192-93 (3d Cir. 2001); *United States v. Vlahos*, 33 F.3d 758, 761-62 (7th Cir. 1994); *United States v. Caggiano*, 660 F.2d 184, 189-90 (6th Cir. 1981).[4] Those courts have uniformly concluded that such orders are immediately appealable under the collateral order doctrine. Although those cases are not directly applicable here, it is helpful to review their reasoning.

---

[4] The State accurately notes that in describing the holdings in these cases, the courts sometimes employ broad language that, out of context, could be read as holding that orders disqualifying any government counsel in a criminal case are always subject to immediate appeal. *See, e.g.*, *Vlahos*, 33 F.3d at 761 ("An order disqualifying government counsel in a criminal case . . . is immediately appealable[.]"); *Whittaker*, 268 F.3d at 193 (holding that the government may appeal "an order disqualifying a United States Attorney from prosecuting a criminal case"). However, the reasoning of those cases is limited to their context, involving the disqualification of an entire prosecutor's office. *See Bolden*, 353 F.3d at 874 n.1 ("[D]isqualifying an entire United States Attorney's office differs materially from disqualifying an individual prosecutor for purposes of the collateral order doctrine.").

13

First, the courts all concluded that the orders conclusively determined the disputed matter because they were not tentative or subject to reconsideration. *Williams*, 68 F.4th at 570 (concluding that the effect of a disqualification order "'is fairly irreversible' because it 'materially change[s]' the party's position" (quoting *In re Coordinated Pretrial Procs. in Petroleum Prods. Antitrust Litig.*, 658 F.2d 1355, 1357 (9th Cir. 1981))); *Bolden*, 353 F.3d at 875 (reasoning that the district court did not "intend to revisit" the disqualification decision and the "order conclusively determines that the [U.S. Attorney's Office] may not represent the government" in that case); *Whittaker*, 268 F.3d at 192 (stating that "the order was not tentative or subject to later revision"); *Vlahos*, 33 F.3d at 761 (stating that the order "conclusively determines whether the challenged counsel will be allowed to prosecute"); *Caggiano*, 660 F.2d at 190 (concluding that the disqualification order was "a final determination of the claim").

Second, the courts concluded that the orders addressed an important issue because they implicated separation of powers concerns, prevented the prosecutors from performing their statutory duties, or both.[5] *Williams*, 68 F.4th at 570 (concluding that the issue was important "[c]onsidering the 'special solicitude' owed to Executive branch prerogatives under the separation of powers" (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 743 (1982))); *Bolden*, 353 F.3d at 875 (reasoning that the separation of powers issues implicated by the

---

[5] Federal collateral order doctrine caselaw combines the second and third prongs of the doctrine into a single second prong—whether the order "resolve[s] an important issue completely separate from the merits of the action[.]" *See, e.g.*, *Bolden*, 353 F.3d at 874. Accordingly, those prongs are generally considered together in these cases.

order "are undoubtedly jurisprudentially important"); *Whittaker*, 268 F.3d at 192 ("[T]he issue of whether the United States Attorney in the district of the prosecution may represent the United States surely is important[.]"); *Caggiano*, 660 F.2d at 190 (concluding that the disqualification order addressed the important issue of whether the court could preclude the United States Attorney's Office from carrying out its statutory duties).

Third, the courts concluded that their review of the disqualification orders would be completely separate from the merits. The courts that explained that conclusion generally reasoned that the unique separation of powers concerns implicated by the disqualification of an entire prosecutor's office could be reviewed without delving into the merits of the cases. *Williams*, 68 F.4th at 570 (relying on "the 'special solicitude' owed to Executive branch prerogatives under the separation of powers" (quoting *Nixon*, 457 U.S. at 743)); *Bolden*, 353 F.3d at 875-76 (reasoning that "we can only rarely—if ever—imagine a scenario in which a district court could properly disqualify an entire United States Attorney's office" and that such an order "is almost always reversible error regardless of the underlying merits of the case"); *Caggiano*, 660 F.2d at 190 (finding the order was "separable from" the merits because the "United States Attorney's Office, whose duty it was to prosecute criminal actions in the district, was finally precluded from performing its statutory obligations").

Finally, the courts determined that the disqualification orders could not be effectively reviewed on appeal after a final judgment. As one court noted, awaiting a final judgment would be too late because "[i]f a trial results in an acquittal, then double jeopardy

15

bars the government from appealing or re-prosecuting the case. And if the government obtains a guilty plea or verdict, it's unlikely we can rectify the situation because the government has already prevailed." *Williams*, 68 F.4th at 570 (citation modified); *see also Bolden*, 353 F.3d at 877 (reasoning that if the government "loses at trial, the Double Jeopardy Clause will likely prohibit review"; and that "[i]f the government prevails at trial, it will generally lack standing as a prevailing party to appeal the decision"); *Whittaker*, 268 F.3d at 192 (employing the same reasoning).

At least one state high court has resolved whether the collateral order doctrine permits the immediate appeal from an order disqualifying an entire prosecutor's office. In *State v. Gonzales*, the New Mexico Supreme Court held, in line with the federal decisions discussed above, that such a disqualification order was immediately appealable due to the State's "strong interest, which might not be protected adequately unless immediate appellate review was available." 119 P.3d 151, 156-57 (N.M. 2005).

The State further points out that 11 other states permit an immediate appeal of a prosecutor's disqualification. However, none of those jurisdictions do so under the collateral order doctrine. Instead, as the State recognizes, those jurisdictions have other statutes or rules that expressly permit immediate appeals in those circumstances. Those authorities are not relevant to our analysis here.

The only case the parties identified, or that we have found, in which an appellate court has concluded that the collateral order doctrine permits the immediate appeal of an order disqualifying a single prosecutor is *In re Grand Jury Subpoena of Rochon*, 873 F.2d

16

170, 172 (7th Cir. 1989). There, the district court had disqualified the Attorney General of the United States from participating in a grand jury investigation into civil rights violations allegedly committed by FBI employees against an FBI agent. *Id.* at 171-72. The basis for the disqualification order was that the agent had named the Attorney General, in his official capacity, as a defendant in a related civil suit. *Id.* The district court concluded that the Attorney General might be able to use information obtained from the grand jury investigation to prepare a defense to the separate civil action. *Id.* at 172.

The United States Court of Appeals for the Seventh Circuit concluded that the order was immediately appealable under the collateral order doctrine. *Id.* at 173. The court determined that the issue was completely separate from the merits because the question to be resolved by the grand jury—whether there should be a criminal prosecution—was unrelated to the question in the order on appeal—whether a separate, civil lawsuit filed against the Attorney General required his disqualification from the criminal prosecution. *Id.*

## C. The Disqualification Order

We now turn to the circuit court's order disqualifying the State's Attorney. Mr. Houston concedes that the order meets three of four prongs of the collateral order doctrine test. We briefly address those prongs before turning to the disputed prong, which is whether the order is completely separate from the merits.

17

### 1. The Order Conclusively Determined the Disputed Question.

An order "conclusively determines the disputed question" when it would settle the question completely if allowed to stand. *See In re O.P.*, 470 Md. 225, 251 (2020) ("[T]he disputed question at a shelter care hearing – whether continued temporary placement of the child outside the home is warranted pending adjudication of the [child in need of assistance] petition – is conclusively determined by a juvenile court order denying continued shelter care."); *County Comm'rs of Frederick County v. Schrodel*, 320 Md. 202, 212 (1990) (concluding that an order blocking Frederick County from prosecuting a condemnation action until it obtains a permit to construct a landfill on the property "conclusively determined that the County must wait until it receives a permit . . . before it can go to trial with its condemnation action"); *Schuele v. Case Handyman & Remodeling Servs., LLC*, 412 Md. 555, 573 (2010) (determining that an order denying a petition to compel arbitration "conclusively determines whether [the underlying] claims should be resolved in arbitration by relegating the dispute to a judicial forum").

By contrast, an order does not conclusively determine the disputed question if it is tentative or subject to reconsideration by the court that issues it. *See, e.g.*, *Fuller v. State*, 397 Md. 372, 395 (2007) (holding that an order denying an incarcerated individual's commitment to a drug treatment program did not conclusively resolve the disputed matter because new petitions for commitment could be repeatedly filed "at any other time the defendant voluntarily agrees to participate in treatment").

18

Here, the circuit court's order conclusively disqualified the State's Attorney. It was not a tentative, conditional, or preliminary ruling. As the Appellate Court correctly noted, "it is as conclusive as any interlocutory order could be." *Houston*, 2025 WL 1603439, at *3; *see also, e.g.*, *Rochon*, 873 F.2d at 173 ("An order disqualifying government counsel in a criminal case . . . conclusively determines the disputed question—whether challenged counsel will be permitted to continue his representation.").

### 2. The Order Resolves an Important Issue.

An order disqualifying an elected State's Attorney also resolves an important issue in that it "implicates separation of powers issues." *Bolden*, 353 F.3d at 879. As Mr. Houston concedes, this undoubtedly presents an important question.

### 3. The Order Would Be Effectively Unreviewable After a Final Judgment.

The circuit court's order would be effectively unreviewable after a final judgment. When a prosecuting attorney is disqualified in a criminal case, the State ordinarily cannot appeal either a conviction—because the State will have prevailed—or an acquittal—because of double jeopardy protections. *See Rochon*, 873 F.2d at 173; *see also Whittaker*, 268 F.3d at 192 ("The United States correctly concedes that it cannot appeal from a judgment of not guilty for constitutional reasons, and it ordinarily would not be able to appeal from a judgment of conviction and sentence, as it would be the prevailing party.").

### 4. The Order Is Not Completely Separate from the Merits.

The crux of this dispute is whether the disqualification order meets the third prong of the collateral order doctrine test, which asks whether the order is completely separate

19

from the merits. Any review of the disqualification order here would necessarily be focused on the circuit court's basis for ordering disqualification, which was the court's conclusion that the State's Attorney was likely to be a necessary witness in the case. In explaining what considerations would be required to assess that conclusion, the Appellate Court persuasively demonstrated how such a review would necessarily be inextricably intertwined with the merits of the case against Mr. Houston. The Appellate Court spun out the scenario in which the State's Attorney's testimony would not be inadmissible hearsay, which involved an assessment of testimony that may or may not be provided by other witnesses at trial, strategic decisions that may or may not be made by counsel, and rulings that may or may not be made by the court. *Houston*, 2025 WL 1603439, at *4. The court then concluded that

> our analysis of these issues shows that the question of whether the State's Attorney is likely to be a necessary witness is not completely separate from the merits. We cannot evaluate whether the State's Attorney is likely to be a necessary witness at trial without evaluating how the trial might progress, how the several witnesses might testify, and how the court might rule on various evidentiary issues. For that reason, we are constrained to conclude that the State cannot satisfy the third element of the collateral order doctrine.

*Id.* We agree with that well-reasoned analysis.

We also agree with the Appellate Court that the federal cases discussed above are inapposite. *Id.* In those cases, the courts relied on the extreme nature of orders disqualifying entire prosecutors' offices, reasoning that the unique separation of powers concerns implicated by the orders could be reviewed without delving into the merits of the cases. As the court explained in *Bolden*, the circumstances in which such an order might

20

be appropriate are so exceptional that "a reviewing court will rarely have to delve into the underlying claim to conclude that the disqualification was unwarranted." 353 F.3d at 876.

As the court in *Bolden* also recognized, "disqualifying an entire [prosecutor's] office differs materially from disqualifying an individual prosecutor for purposes of the collateral order doctrine." *Id.* at 874 n.1. When considering the disqualification of an entire office, the focus can be on the propriety of doing so based on the conduct of one or more individual members of the office, which can ordinarily be assessed without reference to the merits of the underlying case or the specific basis for the allegations against the prosecutors at issue. *See, e.g.*, *Williams*, 68 F.4th at 574 (reversing the disqualification of entire office premised on one Assistant U.S. Attorney's alleged failure to disclose knowledge of a defense attorney's conflict of interest); *Whittaker*, 268 F.3d at 194 (reversing the disqualification of entire office premised on a paralegal's improper notice sent to a target of an investigation). By contrast, when considering the disqualification of an individual prosecutor, the focus is on the allegations against that prosecutor, which, as here, will often be inextricably intertwined with the merits.

This case is also distinct from *Rochon*, the only case cited by the State that permitted an interlocutory appeal from the disqualification of a single prosecutor under the collateral order doctrine. There, unlike here, the basis for the disqualification—the individual's separate civil lawsuit naming the Attorney General as a defendant—was not part of the case in which disqualification was ordered. *See* 873 F.2d at 173. Accordingly, review of the basis for disqualification was not intertwined with the merits of the prosecution.

21

Our resolution here is consistent with our treatment of discovery orders, which is an analogous "frequent source of controversy under the collateral order doctrine." Kevin Arthur, *Finality of Judgments* 56 (3d ed. 2018). Most discovery orders do not satisfy the third prong of the collateral order doctrine, as they generally are not completely separate from the merits of the lawsuit. Instead, "a typical discovery order [is] aimed at ascertaining critical facts upon which the outcome of the . . . controversy might depend." *St. Joseph Med. Ctr., Inc. v. Cardiac Surgery Assocs., P.A.*, 392 Md. 75, 87 (2006) (quoting *In re Foley*, 373 Md. 627, 635 (2003)). The propriety of such orders thus ordinarily cannot be determined without consideration of the merits.

Mr. Houston points to the similar analogy of discovery sanctions orders. Appellate review of sanctions orders cannot remain completely separate from the merits and so such orders are not immediately appealable under the collateral order doctrine. *Cunningham v. Hamilton County*, 527 U.S. 198 (1999). Where the relevant sanctions are based on counsel's partial responses and objections to discovery requests, like in *Cunningham*, appellate review of the sanctions would require assessment of the completeness of counsel's responses. *Id.* at 205-06. "Such an inquiry would differ only marginally from an inquiry into the merits." *Id.* at 206.

Similarly here, a reviewing court cannot assess the basis for an order disqualifying a prosecutor for violating the advocate-witness rule without considering the merits of the litigation. We therefore agree with the Appellate Court and the United States Supreme Court that orders "disqualifying attorneys on the ground that they should testify at trial"

are "inextricable from the merits because they involve an assessment of the likely course of the trial and the effect of the attorney's testimony on the judgment." *Richardson-Merrell, Inc.*, 472 U.S. at 439.

Relying on our decision in *In re O.P.*, 470 Md. 225, the State argues that the disqualification order here is completely separate from the merits because it is not a step towards the resolution of the main issue in the case, which is whether Mr. Houston will be found guilty or not guilty. *In re O.P.* involved review of a decision to deny continued shelter care. *Id.* at 232. In that case, there was likely to be significant overlap in the evidence presented in the shelter care proceedings and the evidence that would likely be presented in forthcoming child in need of assistance ("CINA") hearings. *Id.* at 252. However, unlike here, the proceedings themselves were "completely separate." *Id.* (quoting *In re O.P.*, 240 Md. App. 518, 555 (2019)). Shelter care was not "a necessary step on the path to an adjudicatory hearing or disposition" in the CINA case, "the issues in the two proceedings [we]re fundamentally distinct[,]" and review of the shelter care order did not require the Court to contemplate any aspects of how the CINA proceedings might unfold. *Id.* at 252-53 (quoting *In re O.P.*, 240 Md. App. at 554-57). *In re O.P.* is inapposite.

The State also challenges the application of the advocate-witness rule in this analysis. The State accurately notes that, because the rule turns on the likelihood that the attorney is a "necessary" witness, it does not require disqualification whenever an attorney's testimony is merely admissible. The State also argues that because the Appellate Court was able to evaluate the likelihood of the State's Attorney being a necessary witness

23

here, "it is entirely possible to assess the likelihood that a prosecutor's testimony will be necessary without extensive forecasting of how the evidence will unfold."

Just because an appellate court *can* evaluate whether a prosecutor is likely to be a necessary witness in evaluating an interlocutory order, does not mean that the court *should* do so in light of the final judgment rule. The Appellate Court's exercise of forecasting how the trial might proceed to determine whether the State's Attorney would likely be a necessary witness demonstrated how that inquiry is necessarily intertwined with the merits. The difficulty of the inquiry is not the issue. The issue is whether the inquiry is completely separate from the merits. Here, it is not. Accordingly, the order disqualifying the State's Attorney from participating as counsel for the State at trial does not satisfy the requirements of the collateral order doctrine and is not immediately appealable. We will therefore affirm that aspect of the Appellate Court's order.

## D. The Firewall Order

We reach a different conclusion concerning the circuit court's order requiring "a complete and absolute firewall" between "the assistants who will prosecute this case and" the State's Attorney. As with the disqualification order, and for the same reasons, we conclude that the firewall order conclusively determines the issue—that the State's Attorney is barred from communicating with her subordinates concerning the case in almost all respects—and would be effectively unreviewable on appeal after final judgment. We will address the other two prongs of the collateral order doctrine separately.

24

### 1. The Order Resolves an Important Issue.

Although Mr. Houston concedes that the disqualification order resolves an important issue, he argues that the firewall order does not.[6] That is so, he says, because the order "in no way interferes with the work of the Office of the State's Attorney" because co-counsel was apparently prepared to step in to handle the case. The State responds that the order "is of paramount importance, as much or perhaps even more than the disqualification . . . because it is a serious incursion on the separation of powers."

We agree with the State that the firewall order raises important separation of powers concerns. To be sure, the firewall is significantly less intrusive than an order disqualifying an entire prosecutor's office. *See, e.g.*, *United States v. Caggiano*, 660 F.2d 184, 190 (6th Cir. 1981) (stating that an order that "finally precluded" an entire prosecutor's office "from performing its statutory obligations" was "too important to be denied review"). Still, an order that bars an elected State's Attorney from communicating with her deputies and supervising litigation easily meets the threshold of being an important issue for purposes of the collateral order doctrine. A State's Attorney has "broad official discretion to institute and prosecute criminal causes," *Brack v. Wells*, 184 Md. 86, 90 (1944), and "generally may assign to [her] deputies and assistants the performance, subject to [her] discretion and

---

[6] Mr. Houston's brief is inconsistent on this point. At one point, Mr. Houston "concedes that the interlocutory orders here conclusively determine disputed questions, resolve an important issue, and are unreviewable on appeal from final judgment." Elsewhere in his brief, Mr. Houston argues that the firewall issue is not important for purposes of the collateral order doctrine. For purposes of our analysis, we will treat the issue as not conceded.

control, of the duties required of [her] by law," *State v. Aquilla*, 18 Md. App. 487, 494 (1973). An order removing that discretion and authority with respect to a particular case resolves an important issue.

### 2. *The Order Is Completely Separate from the Merits.*

The State argues that whether it is appropriate to forbid a State's Attorney from communicating with her subordinates about a prosecution occurring under her authority has nothing to do with the merits of Mr. Houston's criminal case. Mr. Houston does not concede the point, but also does not identify any way in which the two issues are intertwined. We agree with the State.

The circuit court's basis for ordering the firewall was that once it concluded that the State's Attorney had made herself a witness, "she ha[d] to be treated like a witness in every way[,]" including not having access to any of the prosecution's files and not discussing the case with anyone in her office. According to the court, the fact that the State's Attorney would be a witness required the court to order that she "remove herself from [being] an active participant in this case and adopt a role that she is obligated now to adopt, which is that of exclusively a witness." The court thus articulated a bright-line rule that a prosecutor who will be a witness in a prosecution must be walled off from any other involvement in that prosecution simply by virtue of being a witness.

Appellate review of the circuit court's firewall order does not require review of the circuit court's ruling that the State's Attorney is likely to be a necessary witness. The advocate-witness rule aims to prevent "the trier of fact" from being confused or misled by

26

an attorney serving as both advocate and witness in the same case. Here, due to the disqualification order, that cannot happen. At oral argument, Mr. Houston's counsel stated that Mr. Houston will call the State's Attorney as a witness and question her about her conduct in this case. If that comes to pass, serving as a witness will be the only capacity in which she will appear before the jury. The interests served by the advocate-witness rule, to the extent they are implicated here,[7] are thus fully protected by the disqualification order. Regardless of how the evidence plays out at trial or what strategic decisions are made by counsel, the State's Attorney will not be both an advocate and a witness before the jury in this case.

Mr. Houston has not identified any way in which an appellate court's review of the circuit court's decision to mandate a firewall, separate and apart from the disqualification order, is intertwined with the merits. Beyond what has already been accomplished by the disqualification order—the assurance that the State's Attorney will not serve as both an advocate and witness before the same jury—the advocate-witness rule itself has nothing to say about whether an attorney witness can participate in litigation behind the scenes. The circuit court believed that the firewall order was compelled by the fact of the State's Attorney's status as a witness in the case. On the record before us, we see no reason why the Appellate Court cannot assess that conclusion without its analysis becoming

---

[7] Our opinion should not be read as opining in any way on the merits of either the disqualification order or the firewall order.

intertwined with the merits. That decision is, thus, appealable under the collateral order doctrine.

## CONCLUSION

We hold that (1) the circuit court's order disqualifying the State's Attorney is not appealable under the collateral order doctrine because it is not completely separate from the merits; and (2) the circuit court's order creating a firewall between the State's Attorney and others in her office is appealable under the collateral order doctrine. We will therefore affirm in part and reverse in part the judgment of the Appellate Court and remand to that court to consider the merits of the firewall order.

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO DENY THE MOTION TO DISMISS IN PART AND TO HOLD FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE SPLIT EVENLY BY THE PARTIES.**